# EXHIBIT C

# CERTIFIED POLICY

This certification is affixed to a policy which is a true and accurate copy of the document in the company's business records as of the date shown below.

**No additional insurance is afforded by this copy.**

Travelers Property Casualty Company of America

**Name of Insuring Company(ies)**

████4173          05/18/20 -05/18/21          08/09/2021

**Policy Number(s)**      **Policy Period(s)**      **Date**

Kenneth Kupec, Second Vice President
BI Document Management

**TRAVELERS**

One Tower Square, Hartford, Connecticut 06183

**POLICY NUMBER:** ████4173-20-I5
**ISSUE DATE:** 02/05/2020

# CYBERFIRST DECLARATIONS – TECHNOLOGY

## LIABILITY COVERAGE APPLIES ON A CLAIMS-MADE BASIS. DEFENSE EXPENSES WILL BE APPLIED AGAINST THE RETENTION. DEFENSE EXPENSES ARE PAYABLE WITHIN, AND ARE NOT IN ADDITION TO, THE LIMITS OF INSURANCE. PAYMENT OF DEFENSE EXPENSES WILL REDUCE, AND MAY EXHAUST, THE LIMITS OF INSURANCE.

## PAYMENTS MADE UNDER THE FIRST-PARTY COVERAGE FORM, IF THAT FORM IS PART OF YOUR POLICY, WILL REDUCE, AND MAY EXHAUST, THE LIMITS OF INSURANCE.

**INSURING COMPANY:**

TRAVELERS PROPERTY CASUALTY CO. OF AMERICA
ONE TOWER SQUARE
HARTFORD, CT 06183

**1. NAMED INSURED AND ADDRESS:**

DEXON COMPUTERS, INC.
9201 EAST BLOOMINGTON FREEWAY
STE BB
MINNEAPOLIS, MN 55420

**2. COVERAGE FORMS FORMING THIS POLICY, POLICY PERIODS AND RETROACTIVE DATES:**

Each coverage form indicated with an ☒ is part of our policy.

<u>Third-Party Liability Coverage Forms</u>

☒ **Communications And Media Liability Coverage Form**

**Policy Period**: From 05/18/2020 to 05/18/2021 12:01 A.M. Standard Time at the address of the first named insured as stated herein.

Communications And Media Retroactive Date:                05/18/2019

☒ **Network And Information Security Liability Coverage Form**

**Policy Period**: From 05/18/2020 to 05/18/2021 12:01 A.M. Standard Time at the address of the first named insured as stated herein.

Network And Information Security Retroactive Date:                05/18/2019

☒ **Technology Errors And Omissions Liability Coverage Form**

**Policy Period**: From 05/18/2020 to 05/18/2021 12:01 A.M. Standard Time at the address of the first named insured as stated herein.

Technology Errors And Omissions Retroactive Date:                05/18/2019

☐ **Employed Legal Professional Liability Coverage Form**

**Policy Period**: From                 to                 12:01 A.M. Standard Time at the address of the first named insured as stated herein.

Legal Services Retroactive Date:

**First—Party Coverage Form**

☒ **CyberFirst Expense Reimbursement Coverage Form**

**Policy Period**: From 05/18/2020 to 05/18/2021 12:01 A.M. Standard Time at the address of the first named insured as stated herein.

## 3. LIMITS OF INSURANCE:

| | |
|---|---|
| Aggregate Limit | $1,000,000 |

**Third—Party Liability Coverage Forms**

| | |
|---|---|
| Each Wrongful Act Limit | $1,000,000 |
| Employed Legal Professional Limit | $EXCLUDED |
| Employed Legal Professional Limit Each Wrongful Act Limit | $EXCLUDED |

**First—Party Coverage Form**

| | |
|---|---|
| Security Breach Notification And Remediation Expenses Limit | $1,000,000 |
| Crisis Management Service Expenses Limit | $1,000,000 |
| Business Interruption And Additional Expenses Limit | $1,000,000 |
| IT Provider - Contingent Business Interruption And Additional Expenses Limit | $250,000 |
| Outsource Provider - Contingent Business Interruption And Additional Expenses Limit | $250,000 |
| Extortion Expenses Limit | $1,000,000 |
| Computer Program And Electronic Data Restoration Expenses Limit | $1,000,000 |
| Computer Fraud Limit | $500,000 |
| Funds Transfer Fraud Limit | $500,000 |
| Telecommunications Theft Limit | $100,000 |

## 4. RETENTION:

**Third—Party Liability Coverage Forms**

| | |
|---|---|
| Each Wrongful Act Retention | $10,000 |

**First—Party Coverage Form**

| | |
|---|---|
| Security Breach Notification And Remediation Expenses Retention | $10,000 |
| Crisis Management Service Expenses Retention | $10,000 |
| Extortion Expenses Retention | $10,000 |
| Computer Program And Electronic Data Restoration Expenses Retention | $10,000 |
| Computer Fraud Retention | $10,000 |
| Funds Transfer Fraud Retention | $10,000 |
| Telecommunications Theft Retention | $10,000 |

## 5. WAITING PERIOD:

| | | |
|---|---|---|
| Business Interruption Waiting Period | 24 | Hours |
| IT Provider - Contingent Business Interruption Expenses Waiting Period | 24 | Hours |
| Outsource Provider - Contingent Business Interruption Expenses Waiting Period | 24 | Hours |

CYBERFIRST

6. **PREMIUM:**                                    $4,482.00

7. **SURCHARGE OR ASSESSMENTS:**         $

8. **A Listing of Forms, Endorsements And Schedule Numbers Forming This Policy is attached as a separate listing.**

**NAME AND ADDRESS OF AGENT OR BROKER:**        **COUNTERSIGNED BY:**

ASSUREDPARTNERS OF MN
2361 HIGHWAY 36 W
ST PAUL MN 55113

_____

**Authorized Representative**

**Date:** _____

**POLICY INFORMATION**



**THIS IS NOT A BILL.**

**YOUR POLICY IS DIRECTLY BILLED.   IF THIS IS A POLICY CHANGE, THE ADDITIONAL OR RETURN PREMIUM WILL BE SHOWN ON FUTURE INSTALLMENT BILLINGS.**

---

**Company:**  TRAVELERS PROPERTY CASUALTY CO. OF AMERICA

---

**I N S U R E D**

DEXON COMPUTERS, INC.
9201 EAST BLOOMINGTON FREEWAY
STE BB
MINNEAPOLIS, MN 55420

**Policy Inception/Effective Date:** 05/18/20

**Policy Number:** ▮▮▮▮▮4173-20-I5

**Agency Number:** 2213120

**Transaction Type:**
RENEWAL OF POLICY

**Transaction Number:** 001

**Processing Date:** 02/05/20

**A G E N T**

ASSUREDPARTNERS OF MN
2361 HIGHWAY 36 W
ST PAUL MN 55113

**Account Number:**

---

| Policy Number | Description | Amount | Surtax / Surcharge |
|---|---|---|---|
| 16N54173 | CYBERFIRST LIABILITY POLICY | $4,482.00 | |

THE PREMIUM SHOWN DOES NOT INCLUDE A PREMIUM PAYMENT PLAN SERVICE CHARGE.
IF YOU SELECTED A PREMIUM PAYMENT PLAN YOUR PAYMENT SCHEDULE/BILL WILL SHOW THIS CHARGE.

THIS POLICY IS FULL PAY.
A PAYMENT SCHEDULE/BILL WILL FOLLOW SHORTLY.

INSURED COPY

---

40793 Ed. 12-90
© 1990 The Travelers Indemnity Company. All rights reserved.                    Page 1



# CYBERFIRST® POLICYHOLDER BENEFITS

Thank you for choosing Travelers for your cyber insurance needs. As our insured, Travelers provides you with innovative value-added pre and post breach risk management services at *no additional cost* to help you protect your business. These current benefits include:

**Travelers *eRisk Hub*®:**

Access to a private web-based portal containing information and technical resources that can assist you in the prevention of network, cyber and privacy events and support you in a timely response if an incident occurs. Travelers *eRisk Hub* portal powered by *NetDiligence*® features news, content and services from leading practitioners in risk management, computer forensics, forensic accounting, crisis communications, legal counsel, and other highly-specialized segments of cyber risk.

**To register for Travelers *eRisk Hub*:**

1. Go to **www.eriskhub.com/travelerscyber**
2. Complete the registration form. **Your Access Code is** ███████.
3. Once registered, you can access the portal immediately.

**Please note the following:**

Travelers *eRisk Hub* is a private site provided to certain cyber insureds of Travelers. Please do not share portal access instructions with anyone outside your organization. You are responsible for maintaining the confidentiality of the Access Code provided.

Travelers *eRisk Hub* contains a directory of experienced providers of cyber risk management and breach recovery services. Travelers does not endorse these companies or their respective services. Before you engage any of these companies, we urge you to conduct your own due diligence to ensure the companies and their services meet your needs. Unless otherwise indicated or approved, payment for services provided by these companies is your responsibility.

This material does not amend, or otherwise affect, the provisions or coverages of any insurance policy or bond issued by Travelers. It is not a representation that coverage does or does not exist for any particular claim or loss under any such policy or bond. Coverage depends on the facts and circumstances involved in the claim or loss, all applicable policy or bond provisions, and any applicable law.

# CYBERFIRST POLICYHOLDER BENEFITS

### Travelers Cyber Coaches —

Three cybersecurity coach services are available to help your organization extend your team with expert guidance at no additional cost, as follows:

- **Breach Coach®-**

  Should you experience a data breach event, you may choose to call the Breach Coach listed in the Travelers *eRisk Hub* portal for immediate triage assistance. Your initial consultation of up to one half-hour is at no additional charge. Please be aware that the Breach Coach service is provided by a third-party law firm. Therefore, contacting the Breach Coach does NOT satisfy the claim or first-party notification requirements of your policy.

- **HIPAA Coach —**

  To help your organization identify the cyber related issues HIPAA raises and help minimize potential exposures, you are entitled to consult with a HIPAA Coach listed in the Travelers *eRisk Hub* portal for up to one hour.

- **Security Coach —**

  Talk with a Symantec™ security professional about general cybersecurity questions for up to one hour to help strengthen your organizations security posture with actionable advice and insights listed in the Travelers *eRisk Hub* portal.

### Pre-Breach Services provided by Symantec™:

Preparation is key in helping to mitigate a potential cyber related event. To assist policyholders achieve a higher level of cybersecurity for their organizations Travelers offers the following pre-breach services from Symantec, a global leader in cybersecurity solutions accessible through the Travelers *eRisk Hub*:

- **Symantec™ Cyber Resilience Readiness Assessment and Cyber Security Professional Consultation —**

  An online assessment designed for an organization to quickly understand its current cybersecurity posture while receiving an official report and up to 1 hour consultation with a Symantec security professional to help in improving areas of weakness or vulnerability.

- **Symantec™ Cyber Security Awareness Training Videos —**

  Gain access to security awareness training videos as a method of defense against cybersecurity threats by promoting proactive employee behavior. These courses can be used to complement your employee training requirements.

- **Symantec™ Service Discounts —**

  Obtain meaningful discounts on Symantec products and services including Managed Security Services, Norton for Small Business Software, DeepSight™ Intelligence, Endpoint Encryption, Phishing Readiness and more.

- **Risk Management Whitepapers —**

  Topical insights and expertise on current cyber related trends, risks and threats that face organizations in today's business environment. Available quarterly, these resource guides will help with your organization's preparedness when it comes to cyber related events.

For the services are being provided to you by Symantec and in using them you must agree to Symantec's terms of use & privacy policy. The Travelers Indemnity Company and its property casualty affiliates ("Travelers") makes no warranty, guarantee, or representation as to the accuracy or sufficiency of any such services. The use of the services and the implementation of any product or practices suggested by Symantec or NetDiligence is at your sole discretion. Travelers disclaims all warranties, express or implied. In no event will Travelers be liable in contract or in tort for any loss arising out of the use of the services or Symantec's or any other vendor's products. eRisk Hub and Breach Coach are registered trademarks of NetDiligence.

This material does not amend, or otherwise affect, the provisions or coverages of any insurance policy or bond issued by Travelers. It is not a representation that coverage does or does not exist for any particular claim or loss under any such policy or bond. Coverage depends on the facts and circumstances involved in the claim or loss, all applicable policy or bond provisions, and any applicable law.

  © 2017 The Travelers Indemnity Company. All rights reserved.  **CP-9183 04-17**

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions:

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy or any Coverage Part by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. If the policy is cancelled, that date will become the end of the policy period. If a Coverage Part is cancelled, that date will become the end of the policy period as respects that Coverage Part only.

5. If this policy or any Coverage Part is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us as part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

1. The first Named Insured shown in the Declarations:

   a. Is responsible for the payment of all premiums; and

   b. Will be the payee for any return premiums we pay.

2. We compute all premiums for this policy in accordance with our rules, rates, rating plans, premiums and minimum premiums. The premium shown in the Declarations was computed based on rates and rules in effect at the time the policy was issued. On each renewal continuation or anniversary of the effective date of this policy, we will compute the

IL T0 01 01 07 (Rev. 09–18)                                          Page 1 of 2
Includes the copyrighted material of Insurance Services Office, Inc. with its permission.

premium in accordance with our rates and rules then in effect.

**F.  Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**G.  Equipment Breakdown Equivalent to Boiler and Machinery**

On the Common Policy Declarations, the term Equipment Breakdown is understood to mean and include Boiler and Machinery and the term Boiler and Machinery is understood to mean and include Equipment Breakdown.

This policy consists of the Common Policy Declarations and the Coverage Parts and endorsements listed in that declarations form.

In return for payment of the premium, we agree with the Named Insured to provide the insurance afforded by a Coverage Part forming part of this policy. That insurance will be provided by the company indicated as insuring company in the Common Policy Declarations by the abbreviation of its name opposite that Coverage Part.

One of the companies listed below (each a stock company) has executed this policy, and this policy is countersigned by the officers listed below:

The Travelers Indemnity Company (IND)

The Phoenix Insurance Company (PHX)

The Charter Oak Fire Insurance Company (COF)

Travelers Property Casualty Company of America (TIL)

The Travelers Indemnity Company of Connecticut (TCT)

The Travelers Indemnity Company of America (TIA)

Travelers Casualty Insurance Company of America (ACJ)

*Secretary*                                          *President*

**IL T0 01 01 07** (Rev. 09–18)

Includes the copyrighted material of Insurance Services Office, Inc. with its permission.


**TRAVELERS**

**POLICY NUMBER:** ████████4173-20-I5
**EFFECTIVE DATE:** 05/18/20
**ISSUE DATE:** 02/05/20

# LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS

This listing shows the number of forms, schedules and endorsements by line of business.

| | |
|---|---|
| IL T0 01 01 07 | COMMON POLICY CONDITIONS |
| IL T8 01 10 93 | FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS |
| IL T3 68 01 15 | FEDERAL TERRORISM RISK INSURANCE ACT DISCLOSURE |
| IL T4 14 01 15 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM |

PROFESSIONAL

| | |
|---|---|
| PR T0 44 02 17 | CYBERFIRST DECLARATIONS - TECHNOLOGY |
| PR T1 00 01 17 | CYBERFIRST GENERAL PROVISIONS FORM |
| PR T1 01 01 17 | CYBERFIRST COMMUNICATIONS AND MEDIA LIABILITY COVERAGE FORM |
| PR T1 02 01 17 | CYBERFIRST TECHNOLOGY ERRORS AND OMISSIONS LIABILITY COVERAGE FORM |
| PR T1 03 01 17 | CYBERFIRST NETWORK AND INFORMATION SECURITY LIABILITY COVERAGE FORM |
| PR T1 16 02 17 | CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM |
| PR T3 31 01 17 | EXCLUSION-AIRCRAFT PRODUCTS OR WORK |
| PR T3 09 01 17 | AMENDMENT OF COMMUNICATIONS AND MEDIA WRONGFUL ACT DEFINITION |
| PR T3 33 01 17 | AMENDMENT OF COVERAGE-INFRINGEMENT OF COPYRIGHT SOFTWARE-TECHNOLOGY ERRORS AND OMISSIONS LIABILITY |
| PR T5 06 05 18 | LIMITED REGULATORY ACTION COVERAGE |
| PR T5 20 01 17 | AMENDMENT OF CONDITIONS & COVERAGE FOR FINANCIAL INTEREST IN FOREIGN INSURED ORGANIZATIONS-CYBERFIRST |
| PR T5 50 10 17 | AMENDMENT OF CRIMINAL, DISHONEST, FRAUDULENT OR MALICIOUS WRONGFUL ACTS, OR KNOWING VIOLATIONS OF RIGHTS OR LAWS EXCL |
| PR T5 51 10 17 | AMENDMENT OF DAMAGES DEFINITION |
| PR T5 52 10 17 | AMENDMENT OF SEPARATION OF INSUREDS CONDITION - ROGUE EMPLOYEE |
| PR T5 53 10 17 | AMENDMENT OF ACT OF CYBER EXTORTION DEFINITION |
| PR T5 54 10 17 | AMENDMENT OF BUSINESS INCOME LOSS DEFINITIONS |
| PR T5 55 10 17 | AMENDMENT OF BUSINESS INTERRUPTION PERIOD OF RESTORATION DEFINITION - 180 DAYS |
| PR T5 56 10 17 | AMENDMENT OF CLAIM DEFINITION |
| PR T5 57 10 17 | STATE INCONSISTENCY CONDITION ENDORSEMENT |
| PR T5 58 10 17 | AMENDMENT OF COVERAGE - REIMBURSE OR PAY ON BEHALF |
| PR T5 59 10 17 | AMENDMENT OF COVERAGE-WHO IS AN INSURED-NEWLY ACQUIRED ORGANIZATIONS-35% OR LESS OF YOUR GROSS REVENUE |
| PR T5 61 10 17 | AMENDMENT OF DUTIES IN THE EVENT OF A FIRST-PARTY INCIDENT CONDITION |
| PR T5 62 10 17 | AMENDMENT OF MONEY DEFINITION |
| PR T5 63 10 17 | BUSINESS INTERRUPTION AND ADDITIONAL EXPENSES COVERAGE - SYSTEM FAILURE |
| PR T5 64 06 18 | REPUTATIONAL HARM EXPENSES COVERAGE |
| PR T5 65 06 18 | SOCIAL ENGINEERING FRAUD EXPENSES COVERAGE |
| PR T5 66 07 19 | AMENDMENT OF COMPUTER SYSTEM DISRUPTION DEFINITION - VOLUNTARY SHUTDOWN |
| PR T5 88 07 19 | BRICKED EQUIPMENT COVERAGE |

```
PR T5 89 07 19    VENDOR OR CLIENT PAYMENT FRAUD COVERAGE
PR F0 57 01 17    MINNESOTA MANDATORY ENDORSEMENT
```

# IMPORTANT NOTICE – INDEPENDENT AGENT AND BROKER COMPENSATION

**NO COVERAGE IS PROVIDED BY THIS NOTICE.   THIS NOTICE DOES NOT AMEND ANY PROVISION OF YOUR POLICY. YOU SHOULD REVIEW YOUR ENTIRE POLICY CAREFULLY FOR COMPLETE INFORMATION ON THE COVERAGES PROVIDED AND TO DETERMINE YOUR RIGHTS AND DUTIES UNDER YOUR POLICY. PLEASE CONTACT YOUR AGENT OR BROKER IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE OR ITS CONTENTS. IF THERE IS ANY CONFLICT BETWEEN YOUR POLICY AND THIS NOTICE, THE PROVISIONS OF YOUR POLICY PREVAIL.**

For information about how Travelers compensates independent agents and brokers, please visit www.travelers.com, call our toll-free telephone number 1-866-904-8348, or request a written copy from Marketing at One Tower Square, 2GSA, Hartford, CT 06183.

**PN T4 54 01 08**                                                                     **Page 1 of 1**

# DIRECT CLAIM REPORTING

# 1-800-238-6225

**Direct dial claim service can go a long way toward meeting your needs when it counts. The service enables you to report any claim\* directly to a claim service representative. It is a toll free number (1-800-238-6225) which puts you in touch with the Telephone Claim Reporting Center.**

## It's convenient

The toll free Telephone Claim Reporting Center operates 24 hours a day, seven days a week, 365 days a year. You can report your claims\* immediately - day or night.

## It's efficient

You only need one telephone reporting number (1-800-238-6225) to report any type of claim\*.

## It's responsive

The pertinent claim information is logged in electronically as you speak with one of our Telephone Reporting Claim Service Center Representatives. You are given a claim file number during this important first call, which will enable easy follow-up on the status of your claim.

## When You Call

Your needs can best be served if you have the following information on hand when you call:

- Name of business as it appears on the policy and/or your policy number
- Date and time at which the accident or loss occurred
- State and location at which the accident or loss occurred
- Detailed description of the accident or loss
- Names, addresses, and phone numbers of anyone injured or anyone else involved, including any witnesses
- A complete description of the property or vehicle in the accident or loss
- Name of your agent or broker
- Advise what property or extra expense is involved

- Advise if there is any other insurance available covering the loss, and if so name, address, phone number, and claim numbers of the insurance company.

## How Your Claim Is Handled

To Report a claim\*, just dial 1-800-238-6225 and a Telephone Reporting Claim Service Center Representative will:

## Gather pertinent information

We will ask you a series of questions about the claim to obtain all the necessary information to quickly determine coverage/liability.

## Next Steps

After gathering the information that we need, regardless of the type of claim, a claim representative will contact you to discuss the actions they will take, and most importantly, to answer any questions that you may have.

In addition to claims personnel, you can also call your agent for advice about your claim and to help you with any other insurance needs.

You can help speed up the process if:

- until your claim is reported, you take whatever reasonable action is necessary to protect the property from any further damage.
- You notify your claim representative immediately if you have any additional information or if you are contacted by another insurance company.

> To protect your rights under the policy, remember to report all incidents, even if you are not sure a claim will be made.

\*Unless your policy requires written notice or reporting.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FEDERAL TERRORISM RISK INSURANCE ACT DISCLOSURE

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE
COMMERCIAL GENERAL LIABILITY COVERAGE PART
CYBERFIRST ESSENTIALS LIABILITY COVERAGE PART
CYBERFIRST LIABILITY COVERAGE
EMPLOYEE BENEFITS LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EMPLOYMENT PRACTICES LIABILITY+ WITH IDENTITY FRAUD EXPENSE
    REIMBURSEMENT COVERAGE PART
ENVIRONMENTAL HAZARD POLICY
EXCESS (FOLLOWING FORM) LIABILITY INSURANCE
LAW ENFORCEMENT LIABILITY COVERAGE PART
LIMITED ABOVE GROUND POLLUTION LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDFIRST PRODUCTS/COMPLETED OPERATIONS, ERRORS AND OMISSIONS, AND
    INFORMATION SECURITY LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY - NEW YORK DEPARTMENT
    OF TRANSPORTATION
TRIBAL BUSINESS MANAGEMENT LIABILITY COVERAGE PART
Any other Commercial Liability coverage included in this policy that is subject to
the federal Terrorism Risk Insurance Act of 2002 as amended

## PROVISIONS

The federal Terrorism Risk Insurance Act of 2002 as amended ("TRIA") establishes a program under which the Federal Government may partially reimburse "Insured Losses" (as defined in TRIA) caused by "Acts Of Terrorism" (as defined in TRIA). Act Of Terrorism is defined in Section 102(1) of TRIA to mean any act that is certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The Federal Government's share of compensation for such Insured Losses is established by TRIA and is a percentage of the amount of such Insured Losses in excess of each Insurer's "Insurer Deductible" (as defined in TRIA), subject to the "Program Trigger" (as defined in TRIA). Through 2020, that percentage is established by TRIA as follows:

85% with respect to such Insured Losses occurring in calendar year 2015.

84% with respect to such Insured Losses occurring in calendar year 2016.

83% with respect to such Insured Losses occurring in calendar year 2017.

82% with respect to such Insured Losses occurring in calendar year 2018.

81% with respect to such Insured Losses occurring in calendar year 2019.

80% with respect to such Insured Losses occurring in calendar year 2020.

In no event, however, will the Federal Government be required to pay any portion of the amount of such Insured Losses occurring in a calendar year that in the aggregate exceeds $100 billion, nor will any Insurer be required to pay any portion of such amount provided that such Insurer has met its Insurer Deductible. Therefore, if such Insured Losses occurring in a calendar year exceed $100 billion in the aggregate, the amount of any payments by the Federal Government and any coverage provided by this policy for losses caused by Acts Of Terrorism may be reduced.

For each coverage provided by this policy that applies to such Insured Losses, the charge for such Insured Losses is included in the premium for such coverage. The charge for such Insured Losses that has

been included for each such coverage is in-
dicated below, and does not include any
charge for the portion of such Insured
Losses covered by the Federal Government
under TRIA.

- **<u>1%</u> of each applicable Commercial Liability Coverage premium.**

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
**IL T3 68 01 15**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CYBERFIRST ESSENTIALS LIABILITY COVERAGE PART
CYBERFIRST LIABILITY COVERAGE
DELUXE PROPERTY COVERAGE PART
EMPLOYEE BENEFITS LIABILITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EMPLOYMENT PRACTICES LIABILITY+ WITH IDENTITY FRAUD EXPENSE REIMBURSEMENT
   COVERAGE PART
ENVIRONMENTAL HAZARD POLICY
EQUIPMENT BREAKDOWN COVERAGE PART
EXCESS (FOLLOWING FORM) LIABILITY INSURANCE
LAW ENFORCEMENT LIABILITY COVERAGE PART
LIMITED ABOVE GROUND POLLUTION LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDFIRST PRODUCTS/COMPLETED OPERATIONS, ERRORS AND OMISSIONS, AND
   INFORMATION SECURITY LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY - NEW YORK DEPARTMENT OF
   TRANSPORTATION
TRIBAL BUSINESS MANAGEMENT LIABILITY COVERAGE PART
Any other Coverage Part or Coverage Form included in this policy that is subject to the
   federal Terrorism Risk Insurance Act of 2002 as amended

The following is added to this policy. This provision can limit coverage for any loss arising out of a "certified act of terrorism" if such loss is otherwise covered by this policy. This provision does not apply if and to the extent that coverage for the loss is excluded or limited by an exclusion or other coverage limitation for losses arising out of "certified acts of terrorism" in another endorsement to this policy.

If aggregate insured losses attributable to "certified acts of terrorism" exceed $100 billion in a calendar year and we have met our insurer deductible under "TRIA", we will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of "TRIA", to be an act of terrorism pursuant to "TRIA". The criteria contained in "TRIA" for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to "TRIA"; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"TRIA" means the federal Terrorism Risk Insurance Act of 2002 as amended.

# CYBERFIRST GENERAL PROVISIONS FORM

**THIS FORM APPLIES TO EACH OF THE CYBERFIRST COVERAGE FORMS THAT ARE PART OF YOUR POLICY.**

**EACH LIABILITY COVERAGE FORM APPLIES ON A CLAIMS-MADE BASIS.**

**DEFENSE EXPENSES WILL BE APPLIED AGAINST THE RETENTION.**

**DEFENSE EXPENSES ARE PAYABLE WITHIN, AND ARE NOT IN ADDITION TO, THE LIMITS OF INSURANCE. PAYMENT OF DEFENSE EXPENSES WILL REDUCE, AND MAY EXHAUST, THE LIMITS OF INSURANCE.**

**PAYMENTS MADE UNDER THE EXPENSE REIMBURSEMENT COVERAGE FORM, IF THAT FORM IS PART OF YOUR POLICY, WILL ALSO REDUCE, AND MAY EXHAUST, THE LIMITS OF INSURANCE.**

**PLEASE READ THE ENTIRE FORM CAREFULLY.**

This form contains provisions that apply to each of "your CyberFirst coverage forms". Various provisions in this form and "your CyberFirst coverage forms" restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the CyberFirst Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "first Named Insured" refer to the Named Insured listed first in Item **1.** of the CyberFirst Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **VII** - Definitions in this form and Section **II** - Definitions of "your CyberFirst coverage forms".

## SECTION I – COVERAGE

**1. Defense Of Claims Or Suits – Liability Coverages**

  **a.** We will have the right and duty to defend the insured against any:

    **(1)** "Claim" or "suit" seeking "damages"; or

    **(2)** "Suit" seeking injunctive relief;

    for loss to which the insurance provided under one or more of "your

CyberFirst liability coverage forms" applies, if no provider of other insurance has a duty to defend the insured against that "claim" or "suit". However, we will have no duty to defend the insured against any "claim" or "suit" seeking "damages", or "suit" seeking injunctive relief, for loss to which the insurance provided under "your CyberFirst liability coverage forms" does not apply. We may also, at our discretion, investigate any "wrongful act".

When the sum of all "damages" and "defense expenses" exceeds the applicable retention, we will pay "defense expenses" to defend an insured against a "claim" or "suit". Payment of such "defense expenses" will reduce the Limits of Insurance, and our right and duty to defend an insured ends when we have used up:

  **(1)** The Aggregate Limit in the payment of:

    **(a)** "Damages" or "defense expenses"; and

    **(b)** "Your cyber first-party loss"; or

  **(2)** The Each Wrongful Act Limit in the payment of "damages" or "defense expenses".

For the purposes of our right and duty to defend an insured under this Section, a "suit" seeking injunctive relief for loss to which the insurance provided under one or more of "your CyberFirst liability coverage forms"

PR T1 00 01 17     © 2016 The Travelers Indemnity Company. All rights reserved.     Page 1 of 15

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

TRAVELERS DOC MGMT Page 17 of 83

applies will be deemed to be a "suit" seeking "damages" because of such loss.

**b.** We may settle any "claim" or "suit" with your consent. However, if we notify you that we are willing to pay the amount of a proposed settlement of a "claim" or "suit" and you do not consent to that proposed settlement, in the event of any later settlement or judgment in which the insured incurs "damages" for such "claim" or "suit", subject to Section **III - Limits Of Insurance**, the most we will pay for such "claim" or "suit" after the date you refused to give us your consent will be the combined total of:

**(1)** The amount we were willing to pay for the proposed settlement;

**(2)** 50% of the "defense expenses" incurred for such "claim" or "suit" after the date you refused to give us such consent; and

**(3)** 50% of the amount of "damages" in any judgment or settlement that is greater than the amount we were willing to pay for the proposed settlement.

**c.** When we have a duty to defend an insured against a "claim" or "suit", we will work with you to select defense counsel that is acceptable to both you and us. However, if we are unable to agree with you on the selection of such counsel, we retain the right to appoint such counsel, subject to applicable law.

**d.** We will have the right, but not the duty, to defend your indemnitee, who is not an insured, against a "claim" or "suit" as if it were an insured under Paragraph **a.** above if all of the following conditions are met:

**(1)** The "claim" or "suit" against the indemnitee seeks "damages" for loss for which you are obligated to pay by reason of the assumption of that indemnitee's liability in a contract or agreement that was made before the "wrongful act", including any part of "related" "wrongful acts", that caused such loss was known by any "described authorized person";

**(2)** The insurance provided under one or more of "your CyberFirst liability coverage forms" applies to such liability assumed by you; and

**(3)** The obligation to defend, or the cost of the defense of, the indemnitee, has also been assumed by you in the same contract or agreement.

When the sum of all "damages" and "defense expenses" exceeds the applicable retention, we will pay "defense expenses" to defend your indemnitee against a "claim" or "suit". Payment of such "defense expenses" will reduce the Limits of Insurance.

**2. Exclusions Applying To All Coverages Provided Under Your CyberFirst Coverage Forms**

The following exclusions apply to all of "your CyberFirst coverage forms" and are in addition to the exclusions contained in each such coverage form.

This insurance does not apply to:

**a. Criminal, Dishonest, Fraudulent Or Malicious Wrongful Acts, Or Knowing Violations Of Rights Or Laws**

Loss arising out of any criminal, dishonest, fraudulent or malicious act or omission, or any knowing violation of rights or laws, committed:

**(1)** By the insured; or

**(2)** With the consent or knowledge of the insured.

For the purpose of the insurance provided under "your CyberFirst liability coverage forms", this exclusion does not apply to our duty to defend that insured until it has been determined or admitted in a legal proceeding that such act or omission, or knowing violation was committed:

**(1)** By the insured; or

**(2)** With the consent or knowledge of that insured.

**b. Injunctive Relief**

Loss arising out of complying with any injunctive or other non-monetary relief or any agreement to provide such relief.

This exclusion does not apply to our right and duty to defend any insured against a "suit" seeking injunctive relief.

**c. Known Wrongful Act Or Circumstance**

Loss arising out of:

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(1)** Any "wrongful act", including any part of "related" "wrongful acts"; or

**(2)** Any fact, circumstance, situation or event that is, or reasonably would be regarded as, the basis for any "claim", "suit" or "your cyber first-party loss";

that any "described authorized person" knew about before the first date we or any of our affiliated insurance companies have continuously provided this or similar coverage to you.

**d. Nuclear Energy**

Loss arising out of the "hazardous properties" of "nuclear material".

**e. Personal Injury**

Loss arising out of injury caused by one or more of the following offenses:

**(1)** False arrest, detention or imprisonment;

**(2)** Malicious prosecution; or

**(3)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises.

**f. Pollution**

**(1)** Loss arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order, or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** "Claim" or "suit" by or on behalf of a governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or

assessing the effects of, "pollutants".

**g. Unsolicited Communication**

Loss arising out of any actual or alleged violation of any law that restricts or prohibits the sending, transmitting or distributing of any communication, in any form, that the recipient of such communication did not specifically request to receive.

**3. Exclusions Applying To The Liability Coverages Provided Under Your CyberFirst Coverage Forms**

The following exclusions apply to all of "your CyberFirst liability coverage forms" and are in addition to the exclusions contained in each such coverage form.

This insurance does not apply to:

**a. Claims Or Suits By Certain Persons Or Organizations**

Loss for which a "claim" is made or "suit" is brought by or on behalf of any "controlled organization" or "controlling person or organization".

**b. Contractual Liability**

Loss for which the insured is obligated to pay "damages" by reason of the assumption of liability in a contract or agreement that was made after the "wrongful act", including any part of "related" "wrongful acts", that caused such loss was known by any "described authorized person".

This exclusion does not apply to loss for which the insured would have liability for "damages" without the contract or agreement.

**c. Employment-Related Practices**

Loss to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, "domestic partner", child, parent, brother or sister of that person as a consequence of

loss to that person at whom any of the employment-related practices described in Paragraph **(1)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be held liable as an employer or in any other capacity; and

**(2)** To any obligation to share "damages" with or repay someone else who must pay "damages" because of the loss.

**d. Government Demands Or Proceedings**

Any demand made or proceeding brought by any federal, national, state, local or foreign government, agency or entity.

This exclusion does not apply if such "claim" is made or "suit" is brought by a federal, national, state, local or foreign government, agency or entity in its capacity as a customer of an insured.

**e. Infringement Of Title Or Slogan**

Loss arising out of the infringement of a title or slogan.

This exclusion does not apply to loss to which the insurance provided under your CyberFirst Communications And Media Liability Coverage Form applies, if that coverage is part of your policy.

**f. Libel, Slander Or Disparagement**

Loss arising out of oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

## SECTION II – WHO IS AN INSURED

**1.** If you are:

**a.** An individual, you and your spouse or "domestic partner" are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your partners or your members, and their spouses or "domestic partners", are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the

conduct of your business. Your managers are also insureds, but only with respect to their duties as your managers.

**d.** A public entity, you are an insured. "Your boards" are also insureds. Your lawfully elected or appointed officials, "executive officers" or directors are also insureds, but only with respect to their duties as your elected or appointed officials, "executive officers" or directors.

**e.** An organization other than a partnership, joint venture, limited liability company or public entity, you are an insured. Your "executive officers" and directors are also insureds, but only with respect to their duties as your "executive officers" or directors. Your stockholders are also insureds, but only with respect to their liability as your stockholders.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers", but only while performing duties related to the conduct of your business, and your "employees", other than either your managers (if you are a limited liability company) or your "executive officers" (if you are an organization other than a partnership, joint venture, limited liability company or public entity), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

**b.** Your legal representative if you die, become mentally incompetent, insolvent or bankrupt, but only with respect to duties as such. That representative will have all your rights and duties under this policy.

**c.** Members of "your boards" (if you are a public entity), but only for the conduct of their duties for you or for "your boards". "Employees" of "your boards" are also insureds, but only for work done within the scope of their employment by "your boards", or their performance of duties related to the conduct of the operations of "your boards".

**d.** Your "independent contractors", but only while performing duties related to the conduct of your business.

**3.** Any organization you newly form, other than a partnership or joint venture, is a Named Insured if there is no other insurance which provides similar

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

coverage to that organization.

**4.** Any organization you acquire, other than a partnership or joint venture, is a Named Insured if there is no other insurance which provides similar coverage to that organization. However, if such organization has gross revenue greater than 15% of your gross revenue at the time of such acquisition, coverage under this provision is provided to such organization only:

**a.** Until the 90th day after you acquire the organization or the end of the policy period, whichever is earlier, if you do not report such organization in writing to us within 90 days after you acquire it; or

**b.** Until the end of the policy period, when that date is later than 90 days after you acquire such organization, if you report such organization in writing to us within 90 days after you acquire it and we agree in writing that it will continue to be a Named Insured until the end of the policy period.

Coverage provided to a newly acquired organization under this paragraph does not apply to:

**a.** Loss under any of "your CyberFirst liability coverage forms" caused by a "wrongful act" committed by or on behalf of such organization before you acquired it; or

**b.** "Your cyber first-party loss" caused by a "first-party incident" that occurs before you acquired such organization;

unless we agree in writing to cover such loss.

**5.** Any person or organization that is not otherwise an insured under this policy and that you have agreed in a written contract or agreement to include as an additional insured under this policy is an insured, but only with respect to liability for loss to which one or more of "your CyberFirst liability coverage forms" applies that:

**a.** Is caused by a "wrongful act" committed after you have signed and executed that contract or agreement; and

**b.** Is caused, in whole or in part, by acts or omissions of you, or any person or organization acting on your behalf, under that contract or agreement.

The limits of insurance provided to such person or organization will be the limit that you agreed to provide in the written contract or agreement, or the limit shown in the CyberFirst Declarations, whichever is less.

**6.** Any of your subsidiaries, other than a partnership or joint venture, that is not shown as a Named Insured in the CyberFirst Declarations is a Named Insured if:

**a.** You maintain an ownership interest of more than 50% in such subsidiary on the first day of the policy period; and

**b.** Such subsidiary is not an insured under similar other insurance.

No such subsidiary is an insured after the date, if any, during the policy period that you no longer maintain an ownership interest of more than 50% in such subsidiary.

**7.** No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the CyberFirst Declarations. This paragraph does not apply to any such partnership or joint venture that otherwise qualifies as an insured under Section **II** - Who Is An Insured.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the CyberFirst Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** "Claims" made or "suits" brought;

**c.** Persons or organizations making "claims" or bringing "suits"; or

**d.** "First-party incidents".

**2.** The Aggregate Limit is the most we will pay for the sum of:

**a.** All "damages" and "defense expenses" for the combined total of all "claims" or "suits" for loss to which the insurance provided under one or more of "your CyberFirst liability coverage forms" applies; and

**b.** "Your cyber first-party loss", if the CyberFirst Expense Reimbursement Coverage Form is part of your policy.

**3.** Subject to Paragraph **2.** above, the Each Wrongful Act Limit is the most we will pay for the sum of all "damages" and "defense expenses" for all "claims" or

"suits" for loss:

**a.** To which the insurance provided under one or more of "your CyberFirst liability coverage forms" applies; and

**b.** That is caused by the same "wrongful act" or "related" "wrongful acts".

**4.** If the CyberFirst Expense Reimbursement Coverage Form is part of your policy, subject to Paragraph **2.** above:

**a.** The Security Breach Notification And Remediation Expenses Limit of Insurance is the most we will pay for the sum of all of "your security breach notification and remediation expenses" for the combined total of all "security breaches";

**b.** The Crisis Management Service Expenses Limit of Insurance is the most we will pay for the sum of all of "your crisis management service expenses" for the combined total of all "wrongful acts";

**c.** The Business Interruption And Additional Expenses Limit of Insurance is the most we will pay for the sum of all of "your business interruption expenses" for the combined total of all "computer system disruptions";

**d.** The IT Provider - Contingent Business Interruption And Additional Expenses Limit of Insurance is the most we will pay for the sum of all "your IT provider contingent business interruption expenses" for the combined total of all "disruptions" to an "IT provider's" "system";

**e.** The Outsource Provider - Contingent Business Interruption And Additional Expenses Limit of Insurance is the most we will pay for the sum of all "your outsource provider contingent business interruption expenses" for the combined total of all "disruptions" to an "outsource provider's" "system";

**f.** The Extortion Expenses Limit of Insurance is the most we will pay for the sum of all of "your cyber extortion expenses" for the combined total of all "acts of cyber extortion";

**g.** The Computer Program And Electronic Data Restoration Expenses Limit of Insurance is the most we will pay for the sum of all of "your restoration expenses" for the combined total of all "computer violations";

**h.** The Computer Fraud Limit of Insurance is the most we will pay for the sum of all of "your computer fraud loss" for the combined total of all "computer frauds";

**i.** The Funds Transfer Fraud Limit of Insurance is the most we will pay for the sum of all of "your funds transfer fraud loss" for the combined total of all "funds transfer frauds"; and

**j.** The Telecommunications Theft Limit of Insurance is the most we will pay for the sum of all of "your telecommunications theft loss" for the combined total of all "telecommunications thefts".

**5.** When any of "your CyberFirst coverage forms" and any other policy or insuring clause in a coverage form or bond written by us or any of our affiliated insurance companies and issued to you or any "controlled organization" or "controlling person or organization" apply or applied to the same "claim", "suit" or "first-party incident", the most we will pay for "damages", "defense expenses" and "your cyber first-party loss" is the highest limit of insurance that applies or applied to the same "claim", "suit" or "first-party incident" under any one of those policies or clauses.

This paragraph does not apply to umbrella insurance, or excess insurance, written by us or any of our affiliated insurance companies and issued to you or any "controlled organization" or "controlling person or organization" specifically to apply in excess of the Limits of Insurance shown in the CyberFirst Declarations.

## SECTION IV – RETENTIONS

**1. Liability Coverages**

**a.** The Each Wrongful Act Retention shown in the CyberFirst Declarations and the rules below fix the amount of "damages" and "defense expenses" incurred by, or on behalf of, you or any insured that you will be responsible for paying, regardless of the number of:

**(1)** Insureds;

**(2)** "Claims" made or "suits" brought; or

**(3)** Persons or organizations making "claims" or bringing "suits".

**b.** The Each Wrongful Act Retention applies to all "damages" and

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

"defense expenses" for all "claims" or "suits" for loss:

**(1)** To which the insurance provided under one or more of "your CyberFirst liability coverage forms" applies; and

**(2)** That is caused by the same "wrongful act" or "related" "wrongful acts".

**c.** The terms of this policy, including those with respect to:

**(1)** Our right and duty with respect to the defense of "claims" or "suits"; and

**(2)** Your duties in the event of a "wrongful act," "claim" or "suit";

apply irrespective of the application of the retention amount.

**2. First-Party Coverages**

**a.** We will not reimburse you for any of "your cyber first-party loss" until the amount of such loss exceeds the applicable retention shown in the CyberFirst Declarations.

**b.** The Security Breach Notification And Remediation Expenses Retention applies to all of "your security breach notification and remediation expenses" caused by the same "security breach" or "related" "security breaches".

**c.** The Crisis Management Service Expenses Retention applies to all of "your crisis management service expenses" caused by the same "wrongful act" or "related" "wrongful acts".

**d.** The Extortion Expenses Retention applies to all of "your cyber extortion expenses" caused by the same "act of cyber extortion" or "related" "acts of cyber extortion".

**e.** The Computer Program And Electronic Data Restoration Expenses Retention applies to all of "your restoration expenses" caused by the same "computer violation" or "related" "computer violations".

**f.** The Computer Fraud Retention applies to all of "your computer fraud loss" caused by the same "computer fraud" or "related" "computer frauds".

**g.** The Funds Transfer Fraud Retention applies to all of "your funds transfer fraud loss" caused by the same "funds transfer fraud" or "related" "funds transfer frauds".

**h.** The Telecommunications Theft Retention applies to all of "your telecommunications theft loss" caused by the same "telecommunications theft" or "related" "telecommunications thefts".

**i.** If more than one retention applies to "your cyber first-party loss" caused by the same "first-party incident" or "first-party incidents" that are "related", we will apply each retention separately. However, the sum of all retention amounts applied to such loss will not exceed the largest applicable retention.

**3. Liability And First-Party Coverages**

**a.** We may pay all or part of a retention on behalf of an insured. If we pay all or part of a retention, you will promptly reimburse us for such part of the retention amount as we have paid. If you do not reimburse us and we are awarded the retention amount we sought, or any part of that amount, in any legal proceeding against you, you agree to pay us the amount of the award and the following:

**(1)** "Our retention recovery expenses"; and

**(2)** Interest, from the date of our notice of payment to you, on the retention amount awarded to us.

**b.** If a:

**(1)** "First party incident", that causes "your cyber first-party loss"; and

**(2)** "Wrongful act" that causes loss for which the insurance provided under one or more of "your CyberFirst liability coverage forms" applies;

are "related", we will apply each retention separately. However, the sum of all retention amounts applied to such losses will not exceed the largest applicable retention.

**c.** The Limits of Insurance will not be reduced by the payment of any applicable retention.

**SECTION V – CYBER CONDITIONS**

**1. Conditions Applying To All Coverages Provided Under Your CyberFirst Coverage Forms**

The following conditions apply to all of "your CyberFirst coverage forms".

**a. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this policy.

**b. Other Insurance**

**(1)** The insurance provided under "your CyberFirst coverage forms" is excess over any valid and collectible other insurance that is available to the insured for a loss we cover under this policy, whether such other insurance is primary, excess, contingent or on any other basis.

As used anywhere in this policy, other insurance means insurance, or the funding of losses, that is provided by, through or on behalf of:

**(a)** Another insurance company;

**(b)** Any risk retention group;

**(c)** Any self-insurance method or program, in which case the insured will be deemed to be the provider of other insurance; or

**(d)** Any similar risk transfer or risk management method.

Other insurance does not include umbrella insurance, or excess insurance, that you bought specifically to apply in excess of the Limits of Insurance shown in the CyberFirst Declarations.

**(2)** We will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible, retention and self-insured amounts under all such other insurance.

**c. Representations**

By accepting this policy, you agree:

**(1)** The statements in the CyberFirst Declarations are accurate and complete;

**(2)** Those statements are based upon representations you made to us; and

**(3)** We have issued this policy in reliance upon your representations.

The unintentional omission of, or unintentional error in, any information provided by you which we relied upon in issuing this policy will not prejudice your rights under this insurance. However, this provision does not affect our right to collect additional premium or to exercise our rights of cancellation or nonrenewal in accord-ance with applicable insurance laws or regulations.

**d. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

**(1)** As if each Named Insured were the only Named Insured; and

**(2)** Separately to each insured against whom a "claim" is made or "suit" is brought.

**e. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover from others, all or part of any payment we have made under this policy in connection with a "claim", "suit" or "first-party incident", those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or initiate an alternative dispute resolution proceeding to enforce those rights, or will transfer those rights to us and help us enforce them.

We will apply any amounts recovered in enforcing those rights of recovery in the following order:

**(1)** First, we will reimburse any person or organization, including us or the insured, any amount that person or organization has paid in excess of the Limits of Insurance.

**(2)** Next, if there is any amount remaining, we will retain an amount equal to the amount we have paid under this policy in connection with the "claim", "suit" or "first-party incident".

**(3)** Then, if there is any amount remaining, we will pay that amount to the insured, including any amounts within any applicable retention.

If any amounts are recovered in enforcing those rights of recovery,

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

reasonable expenses incurred in enforcing such rights will be shared among all persons or organizations receiving amounts recovered. Each such person's or organization's share of those expenses is based on the ratio of its amount recovered to the total amounts recovered by all such persons or organizations in enforcing such rights.

If the insured has agreed in a written contract or agreement to waive that insured's right of recovery against any person or organization, we waive our right of recovery against such person or organization, but only for payments we make because of:

**(1)** Loss under any of "your CyberFirst liability coverage forms" caused by a "wrongful act" committed; or

**(2)** "Your cyber first-party loss" caused by a "first-party incident" that occurs;

subsequent to the execution of the contract or agreement.

**f. When We Do Not Renew**

If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of the nonrenewal not less than 30 days before the end of the policy period.

If such notice is mailed, proof of mailing will be sufficient proof of such notice.

**g. Currency**

Payments for "damages", "defense expenses" and "your cyber first-party loss" will be in the currency of the United States of America. At our option, we may make these payments in a different currency. Any necessary currency conversion for the payment of "damages" will be calculated based on the rate of exchange published in the next Wall Street Journal subsequent to the date of judgment or settlement. Any necessary currency conversion for the payment of "defense expenses" or "your cyber first-party loss" will be calculated based on the rate of exchange published in the Wall Street Journal immediately preceding the date the payment is processed.

**h. Common Policy Conditions References To Common Policy Declarations And Coverage Part**

All references to Common Policy Declarations in the Common Policy

Conditions attached to this policy will be deemed to refer to the CyberFirst Declarations. All references to Coverage Part in the Common Policy Conditions attached to this policy will be deemed to refer to "your CyberFirst coverage forms".

**2. Conditions Applying To The Liability Coverages Provided Under Your CyberFirst Coverage Forms**

The following conditions apply to all of "your CyberFirst liability coverage forms".

**a. Duties In The Event Of A Wrongful Act, Claim Or Suit**

**(1)** You must see to it that we are notified as soon as practicable of a "wrongful act" which may result in a "claim" or "suit". To the extent possible, notice should include:

**(a)** How, when and where the "wrongful act" was committed;

**(b)** The nature and location of any loss caused by the "wrongful act";

**(c)** The names and addresses of any persons or organizations sustaining such loss, and the names and addresses of any witnesses; and

**(d)** The names and addresses of each insured that committed the "wrongful act".

**(2)** If a "claim" is made or "suit" is brought against any insured, you must:

**(a)** Immediately record the specifics of the "claim" or "suit" and the date it was received; and

**(b)** Notify us in writing of the "claim" or "suit" as soon as practicable.

**(3)** You and any other involved insured must:

**(a)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

**(b)** Authorize us to obtain records and other information;

**(c)** Cooperate with us in the investigation, defense or

settlement of the "claim" or "suit"; and

**(d)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of loss to which the insurance provided under any of "your CyberFirst liability coverage forms" may also apply.

**(4)** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**b. Legal Action Against Us**

No person or organization has a right under this policy:

**(1)** To join us as a party or otherwise bring us into a "suit" asking for "damages" from an insured; or

**(2)** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured, but we will not be liable for "damages" that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. As used in this provision, an agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**c. Other Insurance – Defense Of Claims Or Suits**

We will have no duty to defend the insured against any "claim" or "suit" if any provider of other insurance has a duty to defend the insured against that "claim" or "suit". But we will have the right to associate in the defense and control any "claim" or "suit" that we reasonably believe is likely to involve the insurance provided under one or more of "your CyberFirst liability coverage forms". If no provider of other insurance defends any "claim" or "suit" seeking "damages", or any "suit" seeking injunctive relief, for loss to which the insurance provided under one or more of "your CyberFirst liability coverage forms" applies, we will undertake to do so, but we will be entitled to the insured's rights

against all those providers of other insurance.

**d. Transfer Of Control Of Defense**

Before the applicable limit of insurance is used up, you may take over control of the defense, including the appeal, of any outstanding "claim" or "suit" previously reported to us if:

**(1)** We and you agree; or

**(2)** A court orders you to do so.

If the applicable limit of insurance is used up, we will notify you as soon as practicable of all outstanding "claims" or "suits", so you can arrange to take over control of their defense.

We agree to take whatever steps are necessary during a transfer of control of defense of an outstanding "claim" or "suit" to continue that defense and avoid a default judgment during such transfer. When we take such steps, you agree that we do not waive or give up any of our rights. You also agree to repay the reasonable expenses we incur for such steps taken after the applicable limit of insurance is used up.

**3. Conditions Applying To The First–Party Coverages Provided Under The CyberFirst Expense Reimbursement Coverage Form**

The following conditions apply to all of the first-party coverages provided under your CyberFirst Expense Reimbursement Coverage Form, if that coverage form is part of your policy.

**a. Duties In The Event Of A First–Party Incident**

**(1)** You must see to it that we are notified in writing as soon as practicable of a "first-party incident" which may result in "your cyber first-party loss". To the extent possible, such notice should include:

**(a)** How, when and where such "first-party incident" occurred; and

**(b)** The nature of and amounts incurred by you that can be directly attributed to such "first-party incident".

**(2)** You and any other involved insured must:

**(a)** Notify law enforcement authorities as soon as possible

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

if you have reason to believe that any "first-party incident" involves a violation of law;

**(b)** Submit to an examination under oath at our request and give us a signed statement of your answers;

**(c)** Give us a detailed proof of loss statement within 120 days of the "first-party incident"; and

**(d)** Cooperate with us in the investigation and settlement of such "first-party incident".

**b. Legal Action Against Us**

No person or organization has a right under this policy to sue us on this policy for "your cyber first-party loss":

**(1)** Unless all of its terms have been fully complied with;

**(2)** Until 90 days after you have filed proof of loss with us; and

**(3)** Unless such suit is brought within two years from the date you discover the "first-party incident" that caused "your cyber first-party loss".

**c. Ownership Of Property And Interests Covered**

The property covered under your CyberFirst Expense Reimbursement Coverage Form is limited to property:

**(1)** That you own or lease;

**(2)** That you hold for others; or

**(3)** For which you are legally liable, except for property inside the premises of a client of yours.

However, the insurance provided under your CyberFirst Expense Reimbursement Coverage Form is for your benefit only. It provides no rights or benefits to any other person or organization. Any claims for coverage for "your cyber first-party loss" must be presented by you.

**d. Valuation Of Securities And Other Property**

The following condition applies to the Extortion Expenses Coverage, Computer Fraud Coverage and Funds Transfer Fraud Coverage.

**(1)** The value of "securities" that we pay for a loss will be determined at the close of business on the

day the loss was discovered. We may, at our option:

**(a)** Pay the value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

**(b)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

**(i)** Value of the "securities" at the close of business on the day the loss was discovered; or

**(ii)** Applicable limit of insurance.

**(2)** The value of "other property" that we pay for a loss will be determined at the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

**(a)** The applicable limit of insurance;

**(b)** The cost to replace the property with property of comparable material and quality and used for the same purpose; or

**(c)** The amount you actually spend that is necessary to repair or replace the property.

We will not pay on a replacement cost basis for any "other property":

**(a)** Until the property is actually repaired or replaced; and

**(b)** Unless the repairs or replacement are made as soon as reasonably possible after the loss.

If the property is not repaired or replaced, we will pay on an actual cash value basis determined as of the day the loss was discovered.

Any "other property" that we pay for or replace becomes our property.

# SECTION VI – EXTENDED REPORTING PERIODS

1. We will provide one or more Extended Reporting Periods for "your CyberFirst liability coverage forms", as described below, for such liability coverages that are cancelled or not renewed, or replaced or renewed by us with insurance that applies on other than a claims-made basis.

2. Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to "claims" or "suits" for loss caused by a "wrongful act" committed on or after the applicable Retroactive Date shown in the CyberFirst Declarations and before the end of the policy period.

   The Extended Reporting Periods do not reinstate or increase the Limits of Insurance. Once in effect, Extended Reporting Periods may not be canceled.

3. A Basic Extended Reporting Period automatically applies to "your CyberFirst liability coverage forms" without additional charge. This period starts with the end of the policy period and lasts for 90 days.

   The Basic Extended Reporting Period does not apply to "claims" or "suits" that are covered under any future insurance you purchase, or that would be covered under such insurance but for the exhaustion of its applicable limit of insurance.

4. A Supplemental Extended Reporting Period is available, but only by an endorsement and for an extra charge. This supplemental period lasts either for 12, 24, 36 or 60 months or for an unlimited period of time, as set forth in the Supplemental Extended Reporting Period Endorsement. This supplemental period replaces the Basic Extended Reporting Period.

   The Supplemental Extended Reporting Period will not go into effect unless we receive all of the following within 90 days after the end of the policy period and you have fulfilled all other duties, and complied with all other conditions and requirements, under this policy:

   (a) A written request from you to purchase the Supplemental Extended Reporting Period Endorsement;

   (b) Full payment of the earned premium for all of "your CyberFirst coverage forms";

   (c) Payment of the additional premium

   for the Supplemental Extended Reporting Period Endorsement; and

   (d) Payment of any retention you owe under this policy.

   We will determine the additional premium for that endorsement in accordance with our rules and rates. The additional premium will not exceed 200% of the annual premium for this policy.

   This endorsement will set forth the terms, not inconsistent with this Section VI - Extended Reporting Periods, applicable to the Supplemental Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first made or "suits" first brought against any insured during such period is excess over any valid and collectible other insurance available under insurance in force after the Supplemental Extended Reporting Period starts.

# SECTION VII – DEFINITIONS

1. "Claim" means,

   a. A written demand that seeks "damages"; or

   b. A written demand to toll or waive a statute of limitations.

2. "Controlled organization" means any organization in which you own the controlling ownership interest.

3. "Controlling person or organization" means any person or organization that owns the controlling ownership interest in you.

4. "Damages":

   a. Means a monetary amount paid to a claimant for loss.

   b. Does not include:

      (1) Credits.

      (2) Voluntary payments.

      (3) Amounts actually paid to you by your customer in exchange for products, services or work.

      (4) An offset of fees, charges or commissions owed to you by your customer.

      (5) Restitution, return or disgorgement of any profits.

      (6) Any fine or penalty imposed by law or regulation against you.

      (7) The portion of any multiplied damage award that exceeds the amount multiplied.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(8)** License fees or royalties of any kind.

**(9)** The amount of liquidated damages awarded pursuant to a contract or agreement that exceeds the amount of "damages" for which the insured would have liability in the absence of such contract or agreement.

**(10)** Fees, costs or expenses pursuant to a prevailing party provision in a contract or agreement.

**(11)** Punitive damages, unless such damages are insurable under the applicable law.

**(12)** "Your cyber first-party loss".

**5.** "Defense expenses":

**a.** Means any of the following reasonable fees, costs or expenses which can be directly allocated to a particular "claim" or "suit":

**(1)** Fees of attorneys, or other authorized representatives where permitted, for legal services, whether by outside or staff representatives;

**(2)** Court, alternative dispute resolution, and other specific items of expense, whether incurred by an outside vendor or by one of our employees, including:

**(a)** Expert testimony;

**(b)** Autopsy;

**(c)** Witnesses and summonses;

**(d)** Copies of documents such as birth and death certificates and medical treatment records;

**(e)** Arbitration fees;

**(f)** Fees or costs for surveillance or other professional investigations which are conducted as part of the handling of a "claim" or "suit"; and

**(g)** Fees or costs for loss prevention and engineering services which are conducted as part of handling of a "claim" or "suit";

**(3)** The costs of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We will not be the principal under these bonds, and we do not have to furnish these bonds;

**(4)** The cost of any required appeal bond for any judgment that we appeal, but only for bond amounts for that part of the judgment that is for "damages" to which the insurance provided under one or more of "your CyberFirst liability coverage forms" apply. We will pay, or reimburse the insured for, the cost of a higher appeal bond amount if we are required to do so under the law that applies. We will not be the principal under any appeal bond, and we do not have to furnish any appeal bond; or

**(5)** Expenses incurred at our request by the insured, who is an individual, to assist us in the investigation or defense of a "claim" or "suit", including actual loss of earnings up to $1,000 a day by that individual because of time off from work.

**b.** Does not include:

**(1)** Our expenses, including salaries, overhead and traveling expenses of our employees, except for those fees, costs or expenses described in Paragraph a. above incurred while handling a "claim" or "suit".

**(2)** Fees paid to independent claims professionals or attorneys (hired to perform the function of claim investigation normally performed by claim adjusters), for developing and investigating a "claim" so that a determination can be made of the cause, extent or responsibility for the loss, including evaluation and settlement of covered "claims".

**6.** "Described authorized person" means:

Any person while he or she is:

**a.** Your director, board member or "executive officer";

**b.** Your appointed or elected official, if you are a public entity; or

**c.** Your risk manager, or any leader of your legal, finance, risk management or other department that is responsible for insurance matters.

**7.** "Domestic partner" means any person who qualifies as a domestic partner, or party to a civil union, under:

**a.** An applicable federal, state, local or foreign law; or

**b.** A formal program established by the insured.

**8.** "Employee" includes a "leased worker". "Employee" does not include an "independent contractor", "volunteer worker" or a prisoner employed by any insured.

**9.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**10.** "First-party incident" means any of the following:

**a.** A "security breach".

**b.** A "wrongful act" that causes "your crisis management service expenses".

**c.** A "computer system disruption".

**d.** A "disruption".

**e.** An "act of cyber extortion".

**f.** A "computer violation".

**g.** "Computer fraud".

**h.** "Funds transfer fraud".

**i.** "Telecommunications theft".

**11.** "Hazardous properties" includes radioactive, toxic or explosive properties.

**12.** "Independent contractor" means any person who is not the insured's "employee" or "volunteer worker", but who performs duties related to the conduct of the insured's business because of a contract or agreement between the insured and that person for specified services.

**13.** "Joint powers authority" means any organization formed by two or more public entities that have agreed in a contract or agreement to jointly exercise any power common to them.

**14.** "Leased worker" means a person hired from a labor leasing firm under an agreement between the hirer and that firm to perform duties related to the conduct of the hirer's business.

**15.** "Nuclear material" means any of the following materials defined in the Federal Atomic Energy Act or any of its amendments:

**a.** Source material;

**b.** Special nuclear material; or

**c.** By-product material.

**16.** "Our retention recovery expenses" means all fees, costs and expenses incurred by us and our attorneys to recover a retention amount in a legal proceeding brought by us against you. But if the retention amount awarded to us is less than the full amount of the retention payment we sought, "our retention recovery expenses" will be a proportional amount based on the ratio of the retention amount awarded to the full amount of the retention payment we sought.

**17.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**18.** "Related" means connected, tied or linked by any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

**19.** "Suit":

**a.** Means a civil proceeding that seeks "damages" or injunctive relief.

**b.** Includes:

**(1)** An arbitration proceeding that seeks such "damages" or injunctive relief and to which the insured must submit or submits with our consent; and

**(2)** Any other alternative dispute resolution proceeding that seeks such "damages" or injunctive relief and to which the insured submits with our consent.

**20.** "Volunteer worker" means a person, other than a prisoner, who:

**a.** Is not acting within the course and scope of his or her employment as an "employee";

**b.** Donates his or her work; and

**c.** Is not paid a fee, salary, or other compensation for that work.

**21.** "Wrongful act" means any of the following:

**a.** "Errors and omissions wrongful act".

**b.** "Network and information security wrongful act".

**c.** "Communications and media wrongful act".

 © 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission. **PR T1 00 01 17**

**22.** "Your boards":

   **a.** Means any board, commission or other governmental unit or department that:

      **(1)** Is under your jurisdiction; and

      **(2)** Is funded and operated as part of your total operating budget.

   **b.** Does not include any "joint powers authority".

**23.** "Your cyber first-party loss" means loss to which the insurance provided under the CyberFirst Expense Reimbursement Coverage Form applies.

**24.** "Your CyberFirst coverage forms" means the coverage forms that you have purchased, as shown in the CyberFirst Declarations.

**25.** "Your CyberFirst liability coverage forms" means the liability coverage forms that you have purchased, as shown in the CyberFirst Declarations.

# CYBERFIRST COMMUNICATIONS AND MEDIA LIABILITY COVERAGE FORM

## THIS INSURANCE PROVIDES CLAIMS-MADE COVERAGE. DEFENSE EXPENSES WILL BE APPLIED AGAINST THE RETENTION. DEFENSE EXPENSES ARE PAYABLE WITHIN, AND ARE NOT IN ADDITION TO, THE LIMITS OF INSURANCE.  PAYMENT OF DEFENSE EXPENSES WILL REDUCE, AND MAY EXHAUST, THE LIMITS OF INSURANCE. PLEASE READ THE ENTIRE FORM CAREFULLY.

Various provisions in this coverage form restrict coverage. Your CyberFirst General Provisions Form also contains provisions that apply to this coverage form, including provisions explaining who is insured under this coverage form and the limits of insurance and retention that apply to the insurance provided under this form. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the CyberFirst Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "first Named Insured" refer to the Named Insured listed first in Item **1.** of the CyberFirst Declarations.  The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** - Who Is An Insured in your CyberFirst General Provisions Form.

The words "policy period" mean the Policy Period for the CyberFirst Communications And Media Liability Coverage Form shown in the CyberFirst Declarations.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **II** - Definitions in this form and Section **VII** - Definitions in your CyberFirst General Provisions Form.

## SECTION I – COMMUNICATIONS AND MEDIA LIABILITY COVERAGE

### 1. Insuring Agreement

The amount we will pay for "damages" and "defense expenses" is limited as described in Section **III** - Limits Of Insurance in your CyberFirst General Provisions Form.

**a.** We will pay those sums that the insured becomes legally obligated to pay as "damages" because of loss to

which this insurance applies that exceed the applicable retention, only if:

**(1)** The loss is caused by a "communications and media wrongful act" committed anywhere in the world;

**(2)** The "communications and media wrongful act" was committed on or after the Communications And Media Retroactive Date shown in the CyberFirst Declarations and before the end of the policy period; and

**(3)** A "claim" or "suit" that seeks "damages" because of the loss is first made or brought against any insured, in accordance with Paragraph **d.** below, during the policy period or any Extended Reporting Period we provide under Section **VI** - Extended Reporting Periods in your CyberFirst General Provisions Form.

**b.** Each "communications and media wrongful act" in a series of "related" "communications and media wrongful acts" will be deemed to have been committed on the date the first "communications and media wrongful act" in that series is committed.

**c.** If no Communications And Media Retroactive Date is shown in the CyberFirst Declarations, the Communications And Media Retroactive Date will be deemed to be the first day of the policy period.

**d.** A "claim" or "suit" that seeks "damages" will be deemed to have been first made or brought at the earlier of the following times:

**(1)** When any "described authorized person" first receives written notice of such "claim" or "suit"; or

CYBERFIRST

**(2)** When we first receive written notice:

**(a)** Of such "claim" or "suit"; or

**(b)** From any insured of a specific "communications and media wrongful act" that caused the loss which resulted in such "claim" or "suit".

All "claims" or "suits" that seek "damages" because of loss caused by the same "communications and media wrongful act" or "related" "communications and media wrongful acts" will be deemed to have been first made or brought at the time the first of those "claims" or "suits" is made or brought against any insured.

**e.** A "claim" or "suit" that seeks "damages" will be deemed to have been first made or brought at the time we receive written notice from any insured of a specific "communications and media wrongful act" only if that notice contains all of the following information:

**(1)** How, when and where the "communications and media wrongful act" was committed;

**(2)** A description of what happened;

**(3)** A description of what "damages" may result;

**(4)** The identity of the person or organization that may make a "claim" or bring a "suit"; and

**(5)** The identity of each insured that committed the "communications and media wrongful act".

Notice to us that:

**(1)** All or part of one or more of any insured's acts or omissions may in the future be discovered to be a "communications and media wrongful act"; or

**(2)** Any insured may in the future receive written notice of a "communications and media wrongful act", "claim" or "suit";

is not notice of a specific "communications and media wrongful act".

## 2. Exclusions

The following exclusions apply to the coverage provided under this form. These exclusions apply in addition to the exclusions in Paragraphs **2.** and **3.** of Section **I** - Coverage in your CyberFirst General Provisions Form.

This insurance does not apply to:

**a.** **Bodily Injury**

Loss arising out of:

**(1)** Physical harm, including sickness or disease;

**(2)** Mental anguish, injury or illness; or

**(3)** Emotional distress;

sustained by a person.

**b.** **Claims Or Suits By Independent Contractors**

Loss arising out of any "claim" made or "suit" brought by or on behalf of any "independent contractor" in connection with material or services supplied to you by that "independent contractor".

**c.** **Claims Or Suits By Insureds Against Insureds**

Loss for which a "claim" is made or "suit" is brought by or on behalf of any current or former insured against any current or former insured.

This exclusion does not apply to any "claim" made or "suit" brought by any person or organization that:

**(1)** Is an insured under Paragraph **5.** of Section **II** - Who Is An Insured in your CyberFirst General Provisions Form; or

**(2)** Has been added as an additional insured by attachment of an endorsement under this policy.

**d.** **Infringement Of Copyrighted Software**

Loss arising out of any actual or alleged "infringement of copyrighted software".

**e.** **Patent And Trade Secrets**

Loss arising out of any actual or alleged infringement or violation of any of the following rights or laws:

**(1)** Patent; or

**(2)** Trade secret.

**f.** **Privacy Related**

Loss arising out of disclosure or use of material that:

**(1)** Appropriates a person's name, voice, photograph or likeness;

**(2)** Unreasonably places a person in a false light; or

**(3)** Discloses information about a person's private life.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**g. Property Damage**

Loss arising out of physical damage to tangible property of others, including all resulting loss of use of that property.

For the purposes of this insurance, data, including information, facts or programs in any electronic or other format, is not tangible property.

## SECTION II — DEFINITIONS

1. "Advertising" means the "broadcasting" or publishing, in any manner, of notice to the general public or specific market segments about goods, products or services for the purpose of attracting customers or supporters.

2. "Advertising material" means any material that:

   **a.** Is subject to copyright law; and

   **b.** Others use and intend to attract customers or supporters.

3. "Broadcasting" means transmitting any audio or visual material for any purpose:

   **a.** By radio or television; or

   **b.** In, by or with any other electronic means of communication, such as the Internet, if that material is part of:

   **(1)** Radio or television programming being transmitted;

   **(2)** Other entertainment, educational, instructional, music or news programming being transmitted; or

   **(3)** "Advertising material" transmitted with any such programming.

4. "Communications and media wrongful act" means any of the following committed by or on behalf of an insured in the conduct of your business:

   **a.** Unauthorized use of any "advertising material", or any "slogan" or "title", of others in the "advertising" of the business, premises, products, services, work or completed work of others.

   **b.** Infringement of copyright, "title", "slogan", trademark, trade name, trade dress, service mark or service name in your "covered material".

   **c.** Plagiarism or unauthorized use of a literary or artistic format, character or performance in your "covered material".

5. "Copyrighted" means protected by a copyright regardless of whether such copyright is registered with the United States Copyright Office.

6. "Covered material" means any material in any form of expression, including material made known in or with any electronic means of communication, such as the Internet.

7. "Infringement of copyrighted software" means:

   **a.** Piracy of a "copyrighted" software product; or

   **b.** Infringement of "copyrighted" software code or any other "copyrighted" element of any part of a software program.

8. "Slogan" means a phrase that others use for the purpose of attracting attention in their advertising.

9. "Title" means a name of a literary or artistic work.

 © 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# CYBERFIRST TECHNOLOGY ERRORS AND OMISSIONS LIABILITY COVERAGE FORM

## THIS INSURANCE PROVIDES CLAIMS-MADE COVERAGE. DEFENSE EXPENSES WILL BE APPLIED AGAINST THE RETENTION. DEFENSE EXPENSES ARE PAYABLE WITHIN, AND ARE NOT IN ADDITION TO, THE LIMITS OF INSURANCE. PAYMENT OF DEFENSE EXPENSES WILL REDUCE, AND MAY EXHAUST, THE LIMITS OF INSURANCE. PLEASE READ THE ENTIRE FORM CAREFULLY.

Various provisions in this coverage form restrict coverage. Your CyberFirst General Provisions Form also contains provisions that apply to this form, including provisions explaining who is insured under this form and the limits of insurance and retention that apply to the insurance provided under this form. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the CyberFirst Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "first Named Insured" refer to the Named Insured listed first in Item **1.** of the CyberFirst Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** - Who Is An Insured in your CyberFirst General Provisions Form.

The words "policy period" mean the Policy Period for the CyberFirst Technology Errors And Omissions Liability Coverage Form shown in the CyberFirst Declarations.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **II** - Definitions in this form and Section **VII** - Definitions in your CyberFirst General Provisions Form.

## SECTION I – ERRORS AND OMISSIONS LIABILITY COVERAGE

### 1. Insuring Agreement

The amount we will pay for "damages" and "defense expenses" is limited as described in Section **III** - Limits Of Insurance in your CyberFirst General Provisions Form.

**a.** We will pay those sums that the insured must pay as "damages" because of loss to which this insurance applies that exceed the applicable retention, only if:

**(1)** The loss arises out of "your product" provided to others or "your work" provided or performed for others;

**(2)** The loss is caused by an "errors and omissions wrongful act" committed anywhere in the world;

**(3)** The "errors and omissions wrongful act" was committed on or after the Technology Errors And Omissions Retroactive Date shown in the CyberFirst Declarations and before the end of the policy period; and

**(4)** A "claim" or "suit" that seeks "damages" because of the loss is first made or brought against any insured, in accordance with Paragraph **d.** below, during the policy period or any Extended Reporting Period we provide under Section **VI** - Extended Reporting Periods in your CyberFirst General Provisions Form.

**b.** Each "errors and omissions wrongful act" in a series of "related" "errors and omissions wrongful acts" will be deemed to have been committed on the date the first "errors and omissions wrongful act" in that series is committed.

**c.** If no Technology Errors And Omissions Retroactive Date is shown in the CyberFirst Declarations, the Technology Errors And Omissions Retroactive Date will be deemed to be the first day of the policy period.

**d.** A "claim" or "suit" that seeks "damages" will be deemed to have been first made or brought at the earlier of the following times:

**(1)** When any "described authorized person" first receives written notice of such "claim" or "suit"; or

**(2)** When we first receive written notice:

**(a)** Of such "claim" or "suit"; or

**(b)** From any insured of a specific "errors and omissions wrongful act" that caused the loss which resulted in such "claim" or "suit".

All "claims" or "suits" that seek "damages" because of loss caused by the same "errors and omissions wrongful act" or "related" "errors and omissions wrongful acts" will be deemed to have been first made or brought at the time the first of those "claims" or "suits" is made or brought against any insured.

**e.** A "claim" or "suit" that seeks "damages" will be deemed to have been first made or brought at the time we receive written notice from any insured of a specific "errors and omissions wrongful act" only if that notice contains all of the following information:

**(1)** How, when and where the "errors and omissions wrongful act" was committed;

**(2)** A description of what happened;

**(3)** A description of what "damages" may result;

**(4)** The identity of the person or organization that may make a "claim" or bring a "suit"; and

**(5)** The identity of each insured that committed the "errors and omissions wrongful act".

Notice to us that:

**(1)** All or part of one or more of any insured's acts or omissions may in the future be discovered to be an "errors and omissions wrongful act"; or

**(2)** Any insured may in the future receive written notice of an "errors and omissions wrongful act", "claim" or "suit";

is not notice of a specific "errors and omissions wrongful act".

## 2. Exclusions

The following exclusions apply to the coverage provided under this form. These exclusions apply in addition to the exclusions in Paragraphs **2.** and **3.** of Section **I** - Coverage in your CyberFirst General Provisions Form.

This insurance does not apply to:

**a. Bodily Injury**

Loss arising out of:

**(1)** Physical harm, including sickness or disease;

**(2)** Mental anguish, injury or illness; or

**(3)** Emotional distress;

sustained by a person.

**b. Claims Or Suits By Insureds Against Insureds**

Loss for which a "claim" is made or "suit" is brought by or on behalf of any current or former insured against any current or former insured.

This exclusion does not apply to any "claim" made or "suit" brought by any person or organization that:

**(1)** Is an insured under Paragraph **5.** of Section **II** - Who Is An Insured in your CyberFirst General Provisions Form; or

**(2)** Has been added as an additional insured by attachment of an endorsement under this policy.

**c. Cost Guarantees Or Estimates**

Loss arising out of any:

**(1)** Cost guarantee or probable cost estimate being exceeded; or

**(2)** Cost overrun.

**d. Costs To Comply With Your Warranties Or For Recall, Removal Or Withdrawal**

Any cost or expense incurred by any insured or others:

**(1)** To comply with any warranty for "your product" or "your work";

**(2)** To repair, replace, upgrade, supplement, or otherwise improve "your product" or "your work", or to perform or complete "your work";

**(3)** For the recall, removal, or withdrawal of "your product" or "your work" from the market or from use by any person or organization for any reason; or

**(4)** For the adjustment, inspection, or disposal of "your product" or "your work".

Paragraphs **(2)**, **(3)** and **(4)** of this exclusion do not apply to loss of use of "your product" or "your

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

work".

### e. Employee Benefit Plans

Loss arising out of the administration of, the conduct of any fiduciary duty for, or the performance of or failure to perform any act or obligation related to any actual or proposed:

**(1)** Benefit plan or trust;

**(2)** Stock option, stock subscription or stock ownership plan; or

**(3)** Compensation plan;

operated by you or on your behalf for the benefit of any of your current, former or prospective "employees" or "independent contractors".

### f. Failure To Deliver Your Product Or Begin Your Work

Loss arising out of any failure:

**(1)** To deliver "your product" due to any actual or threatened cancellation, modification, suspension or impairment of any contract or agreement by you or on your behalf; or

**(2)** To begin "your work" as required by contract or agreement.

### g. Intellectual Property

Loss arising out of any actual or alleged infringement or violation of any of the following rights or laws:

**(1)** Copyright;

**(2)** Patent;

**(3)** Trade dress;

**(4)** Trade name;

**(5)** Trade secret;

**(6)** Trademark; or

**(7)** Other intellectual property rights or laws.

### h. Privacy Related

Loss arising out of disclosure or use of material that:

**(1)** Appropriates a person's name, voice, photograph or likeness;

**(2)** Unreasonably places a person in a false light; or

**(3)** Discloses information about a person's private life.

### i. Professional Services

Loss arising out of the providing or failing to provide professional services by or on behalf of the insured while acting or working as any of the following:

**(1)** Accountant;

**(2)** Architect or surveyor;

**(3)** Lawyer;

**(4)** Insurance agent, broker, company, consultant or representative;

**(5)** Real estate agent or broker; or

**(6)** Civil or structural engineer.

This insurance also does not apply to loss arising out of the providing or failing to provide professional health care services by or on behalf of the insured.

### j. Property Damage

Loss arising out of:

**(1)** Physical damage to tangible property of others, including all resulting loss of use of that property; or

**(2)** Loss of use of tangible property that is not physically damaged arising out of sudden and accidental physical damage to "your product" or "your work" after it has been put to its intended use.

For the purposes of this insurance, data, including information, facts or programs in any electronic or other format, is not tangible property.

### k. Stock Offerings

Loss arising out of any actual or proposed:

**(1)** Public stock offering;

**(2)** Private stock offering or placement; or

**(3)** Debt instrument offering or issuance;

by you or on your behalf.

### l. Violation Of Consumer Protection Laws

Loss arising out of any actual or alleged violation of any unfair or deceptive trade practices, unfair competition, or other consumer protection law committed by or on behalf of an insured.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**m. Violation Of Securities, Antitrust Or Restraint Of Trade Laws**

Loss arising out of any actual or alleged violation of any securities, antitrust or restraint of trade laws.

## SECTION II – DEFINITIONS

1. "Errors and omissions wrongful act" means any error, omission or negligent act.

2. "Your product":

   **a.** Means:

   **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   **(a)** You;

   **(b)** Others trading under your name; or

   **(c)** A person or organization whose business or assets you have acquired; and

   **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.** Includes:

   **(1)** Warranties or representations made at any time, with respect to the fitness, quality, durability, performance or use of such goods or product; and

   **(2)** The providing of or failure to provide warnings or instructions.

3. "Your work":

   **a.** Means:

   **(1)** Work or services performed by you or on your behalf; and

   **(2)** Materials, parts or equipment furnished in connection with such work or services.

   **b.** Includes:

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of such work or services; and

   **(2)** The providing of or failure to provide warnings or instructions.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

# CYBERFIRST NETWORK AND INFORMATION SECURITY LIABILITY COVERAGE FORM

## THIS INSURANCE PROVIDES CLAIMS-MADE COVERAGE. DEFENSE EXPENSES WILL BE APPLIED AGAINST THE RETENTION. DEFENSE EXPENSES ARE PAYABLE WITHIN, AND ARE NOT IN ADDITION TO, THE LIMITS OF INSURANCE. PAYMENT OF DEFENSE EXPENSES WILL REDUCE, AND MAY EXHAUST, THE LIMITS OF INSURANCE.

## PLEASE READ THE ENTIRE FORM CAREFULLY.

Various provisions in this coverage form restrict coverage. Your CyberFirst General Provisions Form also contains provisions that apply to this form, including provisions explaining who is insured under this form and the limits of insurance and retention that apply to the insurance provided under this form. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the CyberFirst Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "first Named Insured" refer to the Named Insured listed first in Item **1.** of the CyberFirst Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II -** Who Is An Insured in your CyberFirst General Provisions Form.

The words "policy period" mean the Policy Period for the CyberFirst Network And Information Security Liability Coverage Form shown in the CyberFirst Declarations.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **II -** Definitions in this form and Section **VII -** Definitions in your CyberFirst General Provisions Form.

### SECTION I – NETWORK AND INFORMATION SECURITY LIABILITY COVERAGE

1. **Insuring Agreement**

   The amount we will pay for "damages" and "defense expenses" is limited as described in Section **III -** Limits Of Insurance in your CyberFirst General Provisions Form.

   **a.** We will pay those sums that the insured becomes legally obligated to pay as "damages" because of loss to

which this insurance applies that exceed the applicable retention, only if:

   **(1)** The loss is caused by a "network and information security wrongful act" committed anywhere in the world;

   **(2)** The "network and information security wrongful act" was committed on or after the Network And Information Security Retroactive Date shown in the CyberFirst Declarations and before the end of the policy period; and

   **(3)** A "claim" or "suit" that seeks "damages" because of the loss is first made or brought against any insured, in accordance with Paragraph **d.** below, during the policy period or any Extended Reporting Period we provide under Section **VI -** Extended Reporting Periods in your CyberFirst General Provisions Form.

   **b.** Each "network and information security wrongful act" in a series of "related" "network and information security wrongful acts" will be deemed to have been committed on the date the first "network and information security wrongful act" in that series is committed.

   **c.** If no Network And Information Security Retroactive Date is shown in the CyberFirst Declarations, the Network And Information Security Retroactive Date will be deemed to be the first day of the policy period.

   **d.** A "claim" or "suit" that seeks "damages" will be deemed to have been first made or brought at the earlier of the following times:

   **(1)** When any "described authorized person" first receives written

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

notice of such "claim" or "suit"; or

**(2)** When we first receive written notice:

   **(a)** Of such "claim" or "suit"; or

   **(b)** From any insured of a specific "network and information security wrongful act" that caused the loss which resulted in such "claim" or "suit".

All "claims" or "suits" that seek "damages" because of loss caused by the same "network and information security wrongful act" or "related" "network and information security wrongful acts" will be deemed to have been first made or brought at the time the first of those "claims" or "suits" is made or brought against any insured.

**e.** A "claim" or "suit" that seeks "damages" will be deemed to have been first made or brought at the time we receive written notice from any insured of a specific "network and information security wrongful act" only if that notice contains all of the following information:

  **(1)** How, when and where the "network and information security wrongful act" was committed;

  **(2)** A description of what happened;

  **(3)** A description of what "damages" may result;

  **(4)** The identity of the person or organization that may make a "claim" or bring a "suit"; and

  **(5)** The identity of each insured that committed the "network and information security wrongful act".

Notice to us that:

  **(1)** All or part of one or more of any insured's acts or omissions may in the future be discovered to be a "network and information security wrongful act"; or

  **(2)** Any insured may in the future receive written notice of a "network and information security wrongful act", "claim" or "suit";

is not notice of a specific "network and information security wrongful act".

## 2. Exclusions

The following exclusions apply to the coverage provided under this form. These exclusions apply in addition to the exclusions in Paragraphs **2.** and **3.** of Section **I** - Coverage in your CyberFirst General Provisions Form.

This insurance does not apply to:

**a. Bodily Injury**

Loss arising out of physical harm, including sickness or disease, sustained by a person.

**b. Claims Or Suits By Insureds Against Insureds**

Loss for which a "claim" is made or "suit" is brought by or on behalf of any current or former insured against any current or former insured.

This exclusion does not apply to any "claim" made or "suit" brought by:

  **(1)** Any person or organization that:

    **(a)** Is an insured under Paragraph **5.** of Section **II** - Who Is An Insured in your CyberFirst General Provisions Form; or

    **(b)** Has been added as an additional insured by attachment of an endorsement under this policy; or

  **(2)** Your current or former "employee" for failure to prevent unauthorized access to, or use of, data containing private or confidential information of such "employee", but only if such "employee" did not commit or participate in the failure to prevent such unauthorized access or use.

**c. Expected Or Intended Failure To Provide Access**

Loss arising out of any failure to provide access to your web-site or "your computer or communications network" that was expected or intended by the insured.

This exclusion does not apply if the failure to provide access occurred because you suspended your web-site or "your computer or communications network" to mitigate loss arising out of:

  **(1)** A "computer virus" that infected your web-site or "your computer or communications network";

  **(2)** A "denial of service attack"; or

  **(3)** An unauthorized breach of your

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
**PR T1 03 01 17**

web-site or "your computer or communications network" that prevented "authorized users" from accessing such web-site, or computer or communications network.

**d. Intellectual Property**

Loss arising out of any actual or alleged infringement or violation of any of the following rights or laws:

**(1)** Copyright;

**(2)** Patent;

**(3)** Trade dress;

**(4)** Trade name;

**(5)** Trade secret;

**(6)** Trademark; or

**(7)** Other intellectual property rights or laws.

**e. Internet Service Interruption**

Loss arising out of an Internet service interruption or failure.

This exclusion does not apply if such interruption or failure was caused by you.

**f. Privacy Related**

Loss arising out of disclosure or use of material that:

**(1)** Appropriates a person's name, voice, photograph or likeness; or

**(2)** Unreasonably places a person in a false light.

**g. Property Damage**

Loss arising out of physical damage to tangible property of others, including all resulting loss of use of that property.

For the purposes of this insurance, data, including information, facts or programs in any electronic or other format, is not tangible property.

## SECTION II – DEFINITIONS

**1.** "Authorized user" includes your customer, supplier or supporter.

**2.** "Computer virus" means malicious code that is introduced through your web-site or "your computer or communications network". Once introduced, such code may destroy, alter, contaminate or degrade the integrity, quality or performance of data of any computer application software, computer network,

or computer operating system or related network.

**3.** "Denial of service attack" means an intentional attack on a web-site or a computer or communications network for the purpose of nuisance, sabotage or malicious tampering that has the effect of:

**a.** Depleting system resources available through the Internet to "authorized users" of your web-site or "your computer or communications network"; or

**b.** Impeding access of "authorized users" to your web-site or "your computer or communications network".

**4.** "Identity information" means any of the following information concerning a person:

**a.** Nonpublic personal information as defined in the Gramm-Leach Bliley Act of 1999, or any of its amendments, or any regulation issued pursuant to such Act;

**b.** Medical or health care information, including protected health information as defined in the Health Insurance Portability and Accountability Act of 1996, or any of its amendments, or any regulation issued pursuant to such Act;

**c.** Personal information that is protected from unauthorized access or acquisition under any other local, state, federal or foreign law or regulation; or

**d.** A driver's license or state identification number; social security number; unpublished telephone number; or credit, debit or charge card number, or other financial account number and any security code, access code, password or PIN number associated with such credit, debit or charge card number or other financial account number.

**5.** "Identity information provision" means any provision in your "privacy policy" that:

**a.** Prevents or prohibits wrongful or improper collection of "identity information";

**b.** Requires notice to a person of the collection or use of "identity information";

**c.** Provides a person the ability to agree to or withhold permission for

CYBERFIRST

the collection or use of "identity information";

**d.** Prohibits or restricts the disclosing, sharing or selling of "identity information";

**e.** Requires the correction of incomplete or inaccurate "identity information" after such request is made to you; or

**f.** Mandates procedures and requirements to prevent the loss of "identity information".

**6.** "Network and information security wrongful act" means any of the following committed by or on behalf of an insured in the conduct of your business:

**a.** Failure to prevent the transmission of a "computer virus".

**b.** Failure to provide any "authorized user" of your web-site or "your computer or communications network" with access to such web-site or such computer or communications network.

**c.** Failure to prevent unauthorized access to, or use of, data containing private or confidential information of others, including such data which is stored, maintained or processed on an insured's behalf pursuant to a written contract or agreement.

**d.** Failure to provide notification of any actual or potential unauthorized access to, or use of, data containing private or confidential information of others as required by any "security breach notification law" that applies to you.

**e.** Failure to comply with any "identity information provision" in your "privacy policy".

**7.** "Privacy policy" means any publicly available written document that sets forth your policies, standards, or procedures for the collection, use and disclosure of "identity information".

**8.** "Security breach notification law" means any law or regulation that requires an organization to notify persons that their nonpublic personal information was or may have been accessed or acquired without their authorization.

**9.** "Your computer or communications network" means any computer or communications network that you:

**a.** Rent, lease, license or borrow from others; or

**b.** Own or operate.

Page 4 of 4

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

PR T1 03 01 17

# CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM

## THE LIMITS OF INSURANCE WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF YOUR CYBER FIRST-PARTY LOSS. PLEASE READ THE ENTIRE FORM CAREFULLY.

Various provisions in this coverage form restrict coverage. Your CyberFirst General Provisions Form also contains provisions that apply to this form, including provisions explaining who is insured under this form and the limits of insurance and retention that apply to the insurance provided under this form. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the CyberFirst Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "first Named Insured" refer to the Named Insured listed first in Item **1.** of the CyberFirst Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** - Who Is An Insured in your CyberFirst General Provisions Form.

The words "policy period" mean the Policy Period for the CyberFirst Expense Reimbursement Coverage Form shown in the CyberFirst Declarations.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **II** - Definitions of "your CyberFirst coverage forms" and Section **VII** - Definitions in your CyberFirst General Provisions Form.

## SECTION I – CYBER FIRST-PARTY COVERAGES

**1. Insuring Agreements**

A coverage shown below applies only if the applicable first-party coverage is shown with a Limit of Insurance in the CyberFirst Declarations. The amount we will pay is limited as described in Section **III** - Limits Of Insurance in your CyberFirst General Provisions Form.

**a. Security Breach Notification And Remediation Expenses Coverage**

**(1)** We will reimburse you for loss to which this insurance applies that is "your security breach notification and remediation expenses" that are directly attributable to a "security breach" that:

**(a)** Is caused by a "network and information security wrongful act" committed on or after the Network And Information Security Retroactive Date shown in the CyberFirst Declarations and before the end of the policy period;

**(b)** You first have knowledge of during the policy period; and

**(c)** Is first reported to us during the policy period or within 90 days after the end of the policy period.

**(2)** You will be deemed to first have knowledge of a "security breach" on the earlier of the following dates:

**(a)** The date that any "described authorized person" first learns a "security breach" has occurred; or

**(b)** The date that any authorized government agency informs a "described authorized person" that it has concluded that a "security breach" has occurred.

**(3)** A "security breach" will be deemed to have been first reported to us on the date that we first receive a written notice of such "security breach" from any insured or any authorized government entity.

**b. Crisis Management Service Expenses Coverage**

**(1)** We will reimburse you for loss to which this insurance applies that is "your crisis management service expenses" that are:

**(a)** Directly attributable to a "wrongful act" committed on or after the applicable "retroactive date" and before the end of the policy period;

**(b)** First incurred by you during the policy period; and

**(c)** Reported to us during the policy period or within 90

days after the end of the policy period.

**(2)** Each "wrongful act" in a series of "related" "wrongful acts" will be deemed to have been committed on the date the first "wrongful act" in that series is committed.

**(3)** Any of "your crisis management service expenses" that are:

**(a)** Incurred by you after the end of the policy period; and

**(b)** "Related" to any of "your crisis management service expenses" which are first incurred by you during the policy period;

will be deemed to have been incurred and reported by you during the policy period.

**c. Business Interruption And Additional Expenses Coverage**

**(1)** We will reimburse you for loss to which this insurance applies that is:

**(a)** "Your business interruption expenses" directly attributable to a "computer system disruption";

**(b)** "Your IT provider contingent business interruption expenses" directly attributable to a "disruption"; or

**(c)** "Your outsource provider contingent business interruption expenses" directly attributable to a "disruption";

only if such "computer system disruption" or "disruption":

**(a)** Occurs during the policy period; and

**(b)** Is known by any "described authorized person" during the policy period or within 90 days after the end of the policy period.

**(2)** Each "computer system disruption" in a series of "related" "computer system disruptions" will be deemed to have occurred on the date the first such "computer system disruption" in that series occurs.

**(3)** Each "disruption" in a series of "related" "disruptions" will be deemed to have occurred on the date the first such "disruption" in that series occurs.

**(4)** A "described authorized person" will be deemed to first know about a "computer system disruption" or "disruption" when such person first becomes aware of facts that would cause a reasonable person to assume that "business interruption expenses" have been or will be incurred, regardless of when such "computer system disruption" or "disruption" occurred, even though the exact amount or details of such expenses may not then be known.

**d. Extortion Expenses Coverage**

**(1)** We will reimburse you for loss to which this insurance applies that is "your cyber extortion expenses" that are directly attributable to an "act of cyber extortion" that:

**(a)** Occurs during the policy period; and

**(b)** Is known by any "described authorized person" during the policy period or within 90 days after the end of the policy period.

**(2)** Each "act of cyber extortion" in a series of "related" "acts of cyber extortion" will be deemed to have occurred on the date the first such "act of cyber extortion" in that series occurs.

**(3)** A "described authorized person" will be deemed to know about an "act of cyber extortion" when such person first becomes aware of facts that would cause a reasonable person to assume that "your cyber extortion expenses" have been or will be incurred, regardless of when such "act of cyber extortion" occurred, even though the exact amount or details of such expenses may not then be known.

**e. Computer Program And Electronic Data Restoration Expenses Coverage**

**(1)** We will reimburse you for loss to which this insurance applies that is "your restoration expenses" that are directly attributable to a "computer violation" that:

**(a)** Occurred before the end of the policy period; and

**(b)** Is known by any "described authorized person" during the policy period or within 90

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

days after the end of the policy period.

**(2)** Each "computer violation" in a series of "related" "computer violations" will be deemed to occur on the date the first "computer violation" in that series occurs.

**(3)** A "described authorized person" will be deemed to know about a "computer violation" when such person first becomes aware of facts that would cause a reasonable person to assume that "your restoration expenses" have been or will be incurred, regardless of when such "computer violation" occurred, even though the exact amount or details of such expenses may not then be known.

**f. Computer Fraud Coverage**

**(1)** We will reimburse you for loss to which this insurance applies that is "your computer fraud loss" that is directly attributable to a "computer fraud" that:

**(a)** Occurred before the end of the policy period; and

**(b)** Is known by any "described authorized person" during the policy period or within 90 days after the end of the policy period.

**(2)** Each "computer fraud" in a series of "related" "computer frauds" will be deemed to occur on the date the first "computer fraud" in that series occurs.

**(3)** A "described authorized person" will be deemed to know about a "computer fraud" when such person first:

**(a)** Becomes aware of facts that would cause a reasonable person to assume that "your computer fraud loss" has been or will be incurred, regardless of when such "computer fraud" occurred, even though the exact amount or details of such loss may not then be known; or

**(b)** Receives notice that you are liable to a third party under circumstances which, if true, would constitute "your computer fraud loss";

whichever is earlier.

**g. Funds Transfer Fraud Coverage**

**(1)** We will reimburse you for loss to which this insurance applies that is "your funds transfer fraud loss" that is directly attributable to a "funds transfer fraud" that:

**(a)** Occurred before the end of the policy period; and

**(b)** Is known by any "described authorized person" during the policy period or within 90 days after the end of the policy period.

**(2)** Each "funds transfer fraud" in a series of "related" "funds transfer frauds" will be deemed to occur on the date the first "funds transfer fraud" in that series occurs.

**(3)** A "described authorized person" will be deemed to know about a "funds transfer fraud" when such person first:

**(a)** Becomes aware of facts that would cause a reasonable person to assume that "your funds transfer fraud loss" has been or will be incurred, regardless of when such "funds transfer fraud" occurred, even though the exact amount or details of such loss may not then be known; or

**(b)** Receives notice that you are liable to a third party under circumstances which, if true, would constitute "your funds transfer fraud loss";

whichever is earlier.

**h. Telecommunications Theft Coverage**

**(1)** We will reimburse you for loss to which this insurance applies that is "your telecommunications theft loss" that is directly attributable to a "telecommunications theft" that:

**(a)** Occurs during the policy period; and

**(b)** Is known by any "described authorized person" during the policy period or within 90 days after the end of the policy period.

**(2)** Each "telecommunications theft" in a series of "related" "telecommunications thefts" will be deemed to occur on the date

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

the first "telecommunications theft" in that series occurs.

**(3)** A "described authorized person" will be deemed to know about a "telecommunications theft" when such person first:

**(a)** Becomes aware of facts that would cause a reasonable person to assume that "your telecommunications theft loss" has been or will be incurred, regardless of when such "telecommunications theft" occurred, even though the exact amount or details of such loss may not then be known; or

**(b)** Receives notice that you are liable to a third party under circumstances which, if true, would constitute a loss that is "your telecommunications theft loss";

whichever is earlier.

**2. Exclusions**

These exclusions apply in addition to the exclusions in Paragraph **2.** of Section **I** - Coverage in your CyberFirst General Provisions Form.

**a. Exclusions Applying To All First-Party Coverages**

The following exclusions apply to all of the first-party coverages provided under this coverage form.

This insurance does not apply to:

**(1) Bodily Injury**

Loss arising out of:

**(a)** Physical harm, including sickness or disease;

**(b)** Mental anguish, injury or illness; or

**(c)** Emotional distress;

sustained by a person.

**(2) Force Majeure**

Loss arising out of fire, smoke, explosion, lightning, wind, flood, earthquake, volcanic eruption, tidal wave, landslide, hail or act of God.

**(3) Governmental Seizure**

Loss arising out of any seizure, confiscation, nationalization or destruction of "your computer or communications network" by order of any governmental or public authority.

**(4) Known First-Party Incident**

Loss arising out of any "first-party incident", including any part of "related" "first-party incidents", that any "described authorized person" knew about before the first date we or any of our affiliated insurance companies have continuously provided this or similar coverage to you.

**(5) Property Damage**

Loss arising out of physical damage to tangible property, including all resulting loss of use of that property.

For the purposes of this insurance, data, including information, facts or programs in any electronic or other format, is not tangible property.

**b. Exclusions Applying To Computer Fraud Coverage And Funds Transfer Fraud Coverage**

The following exclusions apply to Computer Fraud Coverage and Funds Transfer Fraud Coverage provided under this coverage form.

This insurance does not apply to:

**(1) Automated Clearing House, Service Bureau or Electronic Communications System**

Loss arising out the acts or omissions of an "employee" or director of an automated clearing house (including a Federal Reserve Bank), service bureau, electronic communications system or similar interbank payment or settlement systems (including Fedwire, CHIPS and SWIFT) or merchants who have contracted with you to perform electronic funds transfer services.

**(2) Credit, Debit Or Charge Card Fraud**

Loss arising out of the use or purported use of any credit, debit, charge, access, convenience, identification or other card in:

**(a)** Obtaining credit or funds;

**(b)** Gaining access to automated teller machines which, on your behalf:

**(1)** Disburse "money";

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**(2)** Accept deposits;

**(3)** Cash checks, drafts or similar written instruments; or

**(4)** Make credit card loans; or

**(c)** Gaining access to point of sale devices, customer-bank communication devices, or similar electronic devices or electronic funds transfer systems.

**(3) Fraudulent Instruction**

Loss arising out of any fraudulent instruction if the sender, or any person or organization acting in collusion with the sender, ever had authorized access to your password, PIN or other security code.

**(4) Forged, Altered Or Fraudulent Negotiable Instruments**

Loss arising out of any forged, altered or fraudulent negotiable instrument, "securities", documents or written instructions, or instructions used as source documentation to enter electronic data or send instructions.

**(5) Giving Or Surrendering Of Money, Securities Or Other Property**

Loss arising out of the giving or surrendering of "money", "securities" or "other property" in any exchange or purchase, whether or not fraudulent.

**(6) Income, Interest Or Dividends**

Loss arising out of potential income, including interest and dividends, not realized by you or your customer.

## SECTION II – DEFINITIONS

**1.** "Act of cyber extortion" means any threat made to you, by a person or organization other than a "described insured", expressing an intention to:

**a.** Cause you to transfer, pay or deliver any funds or property using "your computer or communications network" without your permission, authorization and consent;

**b.** Sell or disclose information about your customer, which is unique to the relationship of the customer and you and is not otherwise publicly available, provided such information is stored in an electronic medium in "your computer or communications network" and is retrievable in a perceivable form;

**c.** Access, alter, damage or destroy any computer program, software or other electronic data that is stored within "your computer or communications network";

**d.** Maliciously or fraudulently introduce a "computer virus" into "your computer or communications network" when such threat is premised upon actual or alleged unauthorized access to "your computer or communications network"; or

**e.** Initiate an intentional attack on "your computer or communications network" that depletes system resources or impedes system access available through the Internet to "authorized users" of "your computer or communications network";

provided that such threat is made for the purpose of demanding "money", "securities", property or services.

**2.** "Approved service provider" means a service provider approved in writing by us.

**3.** "Business income loss" means:

**a.** Net profit before income taxes that you would have earned; or

**b.** Net loss before income taxes that you would not have incurred or would have avoided;

if there had been no "computer system disruption", but only with respect to your business operations that are dependent on "your computer or communications network".

**4.** "Business interruption expenses" means:

**a.** "Your business interruption expenses" directly attributable to a "computer system disruption";

**b.** "Your IT provider contingent business interruption expenses" directly attributable to a "disruption"; or

**c.** "Your outsource provider contingent business interruption expenses" directly attributable to a "disruption".

**5.** "Business interruption period of restoration" means the period of time that:

**a.** Begins with the date and time that "your computer or communications network" has been first interrupted by a "computer system disruption" and after application of the "business

interruption expenses waiting period"; and

**b.** Ends with the earlier of:

**(1)** The date and time "your computer or communications network" is restored to substantially the level of operation that had existed prior to the "computer system disruption"; or

**(2)** Thirty days from the date and time that "your computer or communications network" was first interrupted by such "computer system disruption".

**6.** "Business interruption expenses waiting period" means the number of consecutive hours shown as the Business Interruption Expenses Waiting Period in the CyberFirst Declarations that must elapse after the actual and measurable interruption or suspension of your business directly attributable to a "computer system disruption".

**7.** "Computer fraud" means an intentional, unauthorized and fraudulent entry of data or computer instructions directly into, or change of data or computer instructions within, "your computer or communications network" by a person or organization other than a "described insured" or other person under your direct supervision, including any such entry or change made via the Internet or a network, provided that such entry or change causes:

**a.** "Money", "securities" or "other property" to be transferred, paid or delivered;

**b.** Your account or your customer's account to be added, deleted, debited or credited; or

**c.** An unauthorized or fictitious account to be debited or credited.

**8.** "Computer system disruption" means the actual and measurable interruption, suspension or failure of "your computer or communications network" directly attributable to:

**a.** A "computer violation"; or

**b.** An intentional attack on "your computer or communications network" with protocols or instructions transmitted over the Internet or another computer or communications network, which triggers the use of "your computer or communications network's" resources to the extent that the capacity of those resources to accommodate "authorized users" of "your computer or communications network" is depleted or diminished;

provided that you are the specific target of such "computer violation" or intentional attack.

**9.** "Computer violation" means:

**a.** The introduction of a "computer virus" into "your computer or communications network"; or

**b.** Damage to, or destruction of, computer programs, software or other electronic data stored within "your computer or communications network" by a person who:

**(1)** Is not authorized to access "your computer or communications network"; or

**(2)** Is authorized to access "your computer or communications network" but uses such access to cause such damage or destruction.

**10.** "Described insured" means any person who qualifies as an insured under Section **II** - Who Is An Insured in your CyberFirst General Provisions Form, other than:

**a.** Any "independent contractor"; or

**b.** Any person that qualifies as an insured under Paragraph **5.** of Section **II** - Who Is An Insured in your CyberFirst General Provisions Form.

**11.** "Disruption" means the actual and measurable interruption, suspension or failure of a "system" directly attributable to:

**a.** The introduction of a malicious code into a "system"; or

**b.** An attack of a "system" with protocols or instructions transmitted over the Internet or another computer or communications network, which triggers the use of a "system's" resources to the extent that the capacity of those resources to accommodate users of such "system" is depleted or diminished.

**12.** "Extra expense" means necessary expenses incurred by you, with our prior written consent, and directly attributable to a "computer system disruption" or "disruption", but only to the extent such expenses:

**a.** Exceed your normal operating expenses;

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**b.** Reduce "business income loss", "IT provider contingent business income loss", or "outsource provider contingent business income loss"; and

**c.** Would not have been incurred if there had been no "computer system disruption" or "disruption".

**13.** "Funds transfer fraud" means an intentional, unauthorized and fraudulent instruction transmitted by electronic means to a financial institution directing such institution to debit an account and to transfer, pay or deliver "money" or "securities" from such account, which instruction purports to have been transmitted by you, but was in fact transmitted by a person other than a "described insured" without your knowledge or consent.

**14.** "IT provider" means any entity that you do not own, operate or control, other than an "outsource provider", that provides information technology services for you pursuant to a written contract, including web hosting, software, platform and infrastructure services, telecommunication services, electronic data storage or backup services.

**15.** "IT provider contingent business income loss" means, only with respect to your business operations that are dependent on an "IT provider":

**a.** Net profit before income taxes that you would have earned; or

**b.** Net loss before income taxes that you would not have incurred or would have avoided;

if there had been no "disruption" to that "IT provider's" "system".

**16.** "IT provider contingent business interruption period of restoration" means the period of time that:

**a.** Begins with the date and time that the impairment of your business activities which are directly attributable to a "disruption" to an "IT provider's" "system" is first known by any "described authorized person" and after application of the "IT provider contingent business interruption expenses waiting period"; and

**b.** Ends with the earlier of:

**(1)** The date and time your business activities are restored to substantially the level of operation that had existed prior to

the "disruption" to the "IT provider's" "system"; or

**(2)** Thirty days from the date and time that such impairment of your business activities was first known by any "described authorized person".

**17.** "IT provider contingent business interruption expenses waiting period" means the number of consecutive hours shown as the IT Provider Contingent Business Interruption Expenses Waiting Period shown in the CyberFirst Declarations that must elapse after the actual and measurable interruption or suspension of your business directly attributable to a "disruption" to an "IT provider's" "system".

**18.** "Money":

**a.** Means a medium of exchange in current use and authorized or adopted by a domestic or foreign government.

**b.** Includes currency, coins, bank notes, bullion, travelers' checks, registered checks and money orders held for sale to the public.

**19.** "Other property" means any tangible property, other than "money" and "securities", that has intrinsic value.

**20.** "Outsource provider" means any entity that you do not own, operate or control, other than an "IT provider", that performs services for you pursuant to a written contract, other than information technology services, that are necessary for you to conduct business operations.

**21.** "Outsource provider contingent business income loss" means, only with respect to your business operations that are dependent on an "outsource provider":

**a.** Net profit before income taxes that you would have earned; or

**b.** Net loss before income taxes that you would not have incurred or would have avoided;

if there had been no "disruption" to that "outsource provider's" "system".

**22.** "Outsource provider contingent business interruption period of restoration" means the period of time that:

**a.** Begins with the date and time that the impairment of your business activities which are directly attributable to a "disruption" to an "outsource provider's" "system" is first known by any "described authorized person" and after application of the "outsource

     © 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

provider contingent business interruption expenses waiting period"; and

**b.** Ends with the earlier of:

**(1)** The date and time your business activities are restored to substantially the level of operation that had existed prior to the "disruption" to the "outsource provider's" "system"; or

**(2)** Thirty days from the date and time that such impairment of your business activities was first known by any "described authorized person".

**23.** "Outsource provider contingent business interruption expenses waiting period" means the number of consecutive hours shown as the Outsource Provider Contingent Business Interruption Expenses Waiting Period shown in the CyberFirst Declarations that must elapse after the actual and measurable interruption or suspension of your business directly attributable to a "disruption" to an "outsource provider's" "system".

**24.** "Retroactive date" means any of the following:

**a.** Technology Errors And Omissions Retroactive Date shown in the CyberFirst Declarations.

**b.** Manufacturers Errors And Omissions Retroactive Date shown in the CyberFirst Declarations.

**c.** Network And Information Security Retroactive Date shown in the CyberFirst Declarations.

**d.** Communications And Media Liability Retroactive Date shown in the CyberFirst Declarations.

**25.** "Securities":

**a.** Means:

**(1)** Written negotiable or non-negotiable instruments or contracts representing "money" or "other property"; or

**(2)** Uncertified securities.

**b.** Does not include "money".

**26.** "Security breach" means actual or alleged unauthorized access to, or acquisition of, confidential information of others, including "identity information", owned, licensed, maintained or stored by you.

**27.** "System" means any computer or communications network that an "IT provider" or "outsource provider":

**a.** Rents, leases, licenses or borrows from others; or

**b.** Owns or operates.

**28.** "Telecommunications services" means telephone, fax, data or computer transmission services provided by you or to you by others.

**29.** "Telecommunications theft" means the intentional, unauthorized and fraudulent gaining of access to outgoing long distance telephone service through infiltration and manipulation of your "telecommunications services" by a person or organization other than a "described insured".

**30.** "Your business interruption expenses":

**a.** Means the sum of "business income loss" and "extra expense" sustained during the "business interruption period of restoration".

**b.** Does not include:

**(1)** Contractual penalties of any nature.

**(2)** Costs or expenses incurred to update, restore, replace or otherwise improve "your computer or communications network" to a level of functionality beyond that which existed before the "computer system disruption".

**(3)** Costs or expenses incurred to identify or remediate computer system errors or vulnerabilities.

**(4)** Any other consequential loss or damage.

**(5)** Legal cost or legal expense of any nature.

**(6)** Loss arising out of liability to any person or organization that is not an insured.

**(7)** Bank interest or investment income.

**(8)** Fees, costs or expenses to remove software program errors or vulnerabilities.

**31.** "Your computer fraud loss" means your direct loss of "money", "securities" or "other property" directly caused by "computer fraud".

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
**PR T1 16 02 17**

**32.** "Your crisis management service expenses":

**a.** Means the reasonable fees, costs, or expenses incurred and paid by you in:

**(1)** Retaining a public relations consultant or firm, or a crisis management consultant or firm; or

**(2)** Planning or executing your public relations campaign;

to mitigate any actual or potential negative publicity generated from loss to which the insurance provided under any of "your CyberFirst liability coverage forms" applies.

**b.** Does not include fees, costs or expenses you incur to comply with any law or regulation.

**33.** "Your cyber extortion expenses":

**a.** Means any "money" or "securities" you pay, with our prior written consent and pursuant to a recommendation by an "approved service provider", at the direction and demand of any person or organization committing or allegedly committing an "act of cyber extortion", or loss incurred solely in, and directly from, the process of making or attempting to make such payment.

**b.** Includes reasonable costs, fees and expenses incurred by you, with our prior written consent and pursuant to a recommendation by an "approved service provider", to prevent or mitigate such payments.

**34.** "Your funds transfer fraud loss" means your direct loss of "money" or "securities" directly caused by "funds transfer fraud".

**35.** "Your IT provider contingent business interruption expenses":

**a.** Means the sum of "IT provider contingent business income loss" and "extra expense" directly resulting from a "disruption" to an "IT provider's" "system" and sustained during the "IT provider contingent business interruption period of restoration".

**b.** Does not include:

**(1)** Contractual penalties of any nature.

**(2)** Costs or expenses incurred to identify or remediate computer system errors or vulnerabilities.

**(3)** Any other consequential loss or damage.

**(4)** Legal cost or legal expense of any nature.

**(5)** Loss arising out of liability to any person or organization that is not an insured.

**(6)** Bank interest or investment income.

**36.** "Your outsource provider contingent business interruption expenses":

**a.** Means the sum of "outsource provider contingent business income loss" and "extra expense" directly resulting from a "disruption" to an "outsource provider's" "system" and sustained during the "outsource provider contingent business interruption period of restoration".

**b.** Does not include:

**(1)** Contractual penalties of any nature.

**(2)** Costs or expenses incurred to identify or remediate computer system errors or vulnerabilities.

**(3)** Any other consequential loss or damage.

**(4)** Legal cost or legal expense of any nature.

**(5)** Loss arising out of liability to any person or organization that is not an insured.

**(6)** Bank interest or investment income.

**37.** "Your restoration expenses":

**a.** Means:

**(1)** Reasonable costs incurred by you, with our prior written consent, to restore, replace or reproduce damaged or destroyed computer programs, software or other electronic data stored within "your computer or communications network", to the condition that existed immediately preceding the "computer violation"; or

**(2)** Reasonable costs incurred by you, with our prior written consent, to determine that such computer programs, software or other electronic data cannot reasonably be restored, replaced or reproduced.

**b.** Does not include:

(1) Expenses incurred as a result of the reconstruction of computer programs, software or other electronic data which you did not have a license to use.

(2) Expenses incurred to restore, replace or reproduce damaged or destroyed computer programs, software or other electronic data if such damage or destruction was caused by computer programs, software or other electronic data which you did not have a license to use.

(3) Expenses incurred to design, update, improve or perfect the operation or performance of computer programs, software or other electronic data.

(4) Expenses incurred to redo the work product, research or analysis that was the basis of, or resulted in, any computer programs, software or other electronic data stored.

**38.** "Your security breach notification and remediation expenses":

**a.** Means any of the following reasonable fees, costs or expenses incurred and paid by you that are directly attributable to a "security breach":

(1) Forensic fees, costs or expenses to determine the cause of the "security breach" and the persons whose "identity information" was accessed or acquired without their authorization.

(2) Fees, costs or expenses to develop documents or materials to notify the persons whose "identity information" was accessed or acquired without their authorization.

(3) Costs of mailings or other communications to notify the persons whose "identity information" was accessed or acquired without their authorization.

(4) Costs of providing two years, or longer as required by a "security breach notification law", of credit or identity monitoring services to persons whose "identity

information" was accessed or acquired without their authorization, starting the date you first notify such persons of the "security breach". This includes fees, costs or expenses associated with the purchase of an identity fraud insurance policy specifically designed to provide reimbursement of identity fraud related expenses, or similar insurance coverage if such similar coverage is available as part of credit monitoring services, to benefit persons whose "identity information" was accessed or acquired without their authorization.

(5) Costs of establishing and maintaining a call center to be used by persons whose "identity information" was accessed or acquired without their authorization.

(6) Any other fees, costs or expenses necessary to comply with any "security breach notification law" that applies to you.

**b.** Does not include:

(1) Remuneration paid to your regular "employees" for work beyond their normal scheduled hours.

(2) Fees, costs or expenses of outside consultants retained by you, unless we agree to reimburse you for such fees, costs or expenses.

(3) Fines or penalties imposed by law or that any insured has agreed to pay for any reason.

(4) Amounts that you voluntarily agree to pay to any person whose "identity information" was accessed or acquired without his or her authorization.

(5) "Your crisis management service expenses".

**39.** "Your telecommunications theft loss" means amounts you must pay for charges incurred that are directly attributable to the theft of "telecommunications services".

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – AIRCRAFT PRODUCTS OR WORK

This endorsement modifies insurance provided under the following:

CYBERFIRST GENERAL PROVISIONS FORM

## PROVISIONS

1. The following exclusion is added to Paragraph **3.**, **Exclusions Applying To The Liability Coverages Provided Under Your CyberFirst Coverage Forms**, of **SECTION I – COVERAGE:**

   **Aircraft Products or Work**

   Loss arising out of:

   **(1)** Any "aircraft product" provided to others;

   **(2)** Any "aircraft work" provided or performed for others; or

   **(3)** The "grounding" of any aircraft.

2. The following is added to the **DEFINITIONS** Section:

   "Aircraft product" means:

   **a.** Aircraft (including missile or spacecraft and any ground support or control equipment used in connection with aircraft);

   **b.** Any of "your products" manufactured for, used in connection with, or incorporated into aircraft, aircraft parts, aircraft equipment or aircraft accessories, including ground handling tools and equipment;

   **c.** Any of "your products" used at an airport for the purpose of guidance, navigation or direction of aircraft; or

   **d.** Training aids, manuals, blueprints, engineering or other data or advice, and services and labor relating to such aircraft articles or products.

   "Aircraft work":

   **a.** Means any part of "your work" in connection with the manufacture, handling, maintenance, operation or use of any aircraft (including missile or spacecraft and any ground support or control equipment used in connection with aircraft).

   **b.** Includes:

   **(1)** Software used in connection with, or incorporated into aircraft, aircraft parts, aircraft equipment or aircraft accessories, including ground handling tools and equipment;

   **(2)** Software used at an airport for the purpose of guidance, navigation or direction of aircraft; and

   **(3)** Training aids, manuals, blueprints, engineering or other data or advice, and services and labor relating to such aircraft articles or products.

   "Grounding" means the withdrawal of one or more aircraft from flight operations or the imposition of speed, passenger or load restrictions on such aircraft, by reason of the existence of or alleged or suspected existence of any defect, fault or condition in such aircraft or any part therefore sold, handled or distributed by the insured or manufactured, assembled or processed by any other person or organization according to specifications, plans, suggestions, orders, or drawings of the insured or with tools, machinery or other equipment furnished to such persons or organizations by the insured, whether such aircraft so withdrawn are owned or operated by the same or different persons, organizations or corporations.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COMMUNICATIONS AND MEDIA WRONGFUL ACT DEFINITION

This endorsement modifies insurance provided under the following:

CYBERFIRST GENERAL PROVISIONS FORM
CYBERFIRST COMMUNICATIONS AND MEDIA LIABILITY COVERAGE FORM

## PROVISIONS

1. The following replaces the definition of "communications and media wrongful act" in the **DEFINITIONS** Section in the **CYBERFIRST COMMUNICATIONS AND MEDIA LIABILITY COVERAGE FORM:**

   "Communications and media wrongful act" means any of the following committed by or on behalf of an insured in the conduct of your business:

   **a.** Unauthorized use of any "advertising material", or any "slogan" or "title", of others in the "advertising" of the business, premises, products, services, work or completed work of others.

   **b.** Infringement of copyright, "title", "slogan", trademark, trade name, trade dress, service mark or service name in your "covered material".

   **c.** Plagiarism or unauthorized use of a literary or artistic format, character or performance in your "covered material".

   **d.** Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the "claim" is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged.

   **e.** Oral or written publication, including publication by electronic means, of material that:

      **(1)** Appropriates a person's name, voice, photograph or likeness; or

      **(2)** Unreasonably places a person in a false light.

2. The following replaces exclusion **f., Privacy Related** in Paragraph **2.** of **SECTION I – COMMUNICATIONS AND MEDIA LIABILITY COVERAGE** in the **CYBERFIRST COMMUNICATIONS AND MEDIA LIABILITY COVERAGE FORM:**

   **Privacy Related**

   Loss arising out of oral or written publication, including publication by electronic means, of material that discloses information about a person's private life.

3. Exclusion **f., Libel, Slander Or Disparagement,** in Paragraph **3.** of **SECTION I – COVERAGE** in the **CYBERFIRST GENERAL PROVISIONS FORM** is deleted, but only for the purpose of the insurance provided under your CyberFirst Communications And Media Liability Coverage Form.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COVERAGE – INFRINGEMENT OF COPYRIGHTED SOFTWARE – TECHNOLOGY ERRORS AND OMISSIONS LIABILITY

This endorsement modifies insurance provided under the following:

CYBERFIRST TECHNOLOGY ERRORS AND OMISSIONS LIABILITY COVERAGE FORM

## PROVISIONS

1. The following is added to Exclusion **g., Intellectual Property**, in Paragraph **2.** of **SECTION I – ERRORS AND OMISSIONS LIABILITY COVERAGE:**

   With respect to loss arising out of any actual or alleged "infringement of copyrighted software" in "your product" or "your work", this exclusion will apply to such loss only if the "claim" or "suit" is made or brought by or on behalf of any "software copyright owner" against an insured, other than a person or organization that is an insured under Paragraph **5.** Of Section **II** - Who Is An Insured in your CyberFirst General Provisions Form, or has been added as an additional insured by attachment of an endorsement under this policy.

2. The following exclusion is added to Paragraph **2., Exclusions**, of **SECTION I – ERRORS AND OMISSIONS LIABILITY COVERAGE:**

   **Claims Or Suits By Independent Contractors For Infringement Of Copyrighted Software**

   Loss for which a "claim" or "suit" is made or brought for "infringement of copyrighted software" by or on behalf of any "independent contractor" in connection with material or services supplied to you by that "independent contractor".

3. The following is added to the **DEFINITIONS** Section:

   "Copyrighted" means protected by a copyright, regardless of whether such copyright is registered with the United States Copyright Office.

   "Infringement of copyrighted software" means:

   **a.** Piracy of a "copyrighted" software product; or

   **b.** Infringement of "copyrighted" software code or any other "copyrighted" element of any part of a software program.

   "Software copyright owner" means any person or organization claiming ownership of "copyrighted" software code or any other "copyrighted" element of any part of a software program.

 © 2016 The Travelers Indemnity Company. All rights reserved.

CYBERFIRST

POLICY NUMBER: ███████4173–20–I5                    ISSUE DATE: 02/05/20

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIMITED REGULATORY ACTION COVERAGE

This endorsement modifies insurance provided under the following:

CYBERFIRST GENERAL PROVISIONS FORM

**SCHEDULE – REGULATORY ACTION COVERAGE SUBLIMIT**

Regulatory Action Sublimit          $1,000,000

**PROVISIONS**

1. The following is added to the definition of "claim" in **SECTION VII – DEFINITIONS,** but only for the purpose of the insurance provided under your CyberFirst Network And Information Security Liability Coverage Form:

   "Claim" also means a "regulatory action".

2. The following is added to the definition of "damages" in **SECTION VII – DEFINITIONS,** but only for the purpose of the insurance provided under your CyberFirst Network And Information Security Liability Coverage Form:

   "Damages" also means "regulatory fines or penalties" or "consumer redress funds".

3. The following replaces **b.(6)** in the definition of "damages" in **SECTION VII – DEFINITIONS,** but only for the purpose of the insurance provided under your CyberFirst Network And Information Security Liability Coverage Form:

   **(6)** Any fine or penalty, other than "regulatory fines or penalties" or "consumer redress funds", imposed by law or regulation against you.

4. The following is added to Exclusion **d., Government Demands Or Proceedings,** in Paragraph **3. Exclusions Applying To The Liability Coverages Provided Under Your CyberFirst Coverage Forms,** of **SECTION I – COVERAGE:**

   This exclusion also does not apply to any "regulatory action".

5. The following is added to **SECTION III – LIMITS OF INSURANCE:**

   Subject to Paragraph **2.** of Section **III -** Limits Of Insurance, the Regulatory Action Sublimit shown in the Schedule - Regulatory Action Coverage Sublimit is the most we will pay for the sum of all:

   **(1)** "Damages" that are "regulatory fines or penalties" or "consumer redress funds", and

   **(2)** "Defense expenses";

   for the combined total of all "regulatory actions".

6. The following is added to **SECTION VII – DEFINITIONS:**

   "Regulatory action" means an administrative or regulatory proceeding or a civil investigative demand, brought by a domestic or foreign governmental entity.

   "Regulatory fines or penalties" means civil monetary fines or penalties imposed pursuant to an order by a governmental agency, or governmental licensing or regulatory organization, arising out of a "network and information security wrongful act".

   "Consumer redress funds" means money which you are legally obligated to deposit into a fund for the payment of consumer claims arising out of a "network and information security wrongful act".

PR T5 06 05 18          © 2018 The Travelers Indemnity Company. All rights reserved.          Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.**

# AMENDMENT OF CONDITIONS AND COVERAGE FOR FINANCIAL INTEREST IN FOREIGN INSURED ORGANIZATIONS – CYBERFIRST

This endorsement modifies insurance provided under the following:

CYBERFIRST GENERAL PROVISIONS FORM
CYBERFIRST COMMUNICATIONS AND MEDIA LIABILITY COVERAGE FORM
CYBERFIRST TECHNOLOGY ERRORS AND OMISSIONS LIABILITY COVERAGE FORM
CYBERFIRST MANUFACTURERS ERRORS AND OMISSIONS LIABILITY COVERAGE FORM
CYBERFIRST NETWORK AND INFORMATION SECURITY LIABILITY COVERAGE FORM
CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM
CYBERFIRST EMPLOYED LEGAL PROFESSIONAL LIABILITY COVERAGE FORM

## PROVISIONS

1. The following is added to the Common Policy Conditions:

   **Prohibited Coverage – Unlicensed Insurance**

   1. With respect to loss sustained by any insured, or with respect to any property, located in a country or jurisdiction in which we are not licensed to provide this insurance, this insurance does not apply to the extent that insuring such loss would violate the laws or regulations of such country or jurisdiction.

   2. We do not assume responsibility for:

      **a.** The payment of any fine, fee, penalty or other charge that may be imposed on any person or organization in any country or jurisdiction because we are not licensed to provide insurance in such country or jurisdiction; or

      **b.** The furnishing of certificates or other evidence of insurance in any country or jurisdiction in which we are not licensed to provide insurance.

2. The following is added to Paragraph **1., Insuring Agreement**, of **SECTION I** in each of "your CyberFirst liability coverage forms":

   In the event of "foreign cyber liability loss" incurred by a "foreign insured organization", or by any other insured for whom such "foreign insured organization" is liable, we will reimburse the first Named Insured, or any other Named Insured that is not a "foreign insured organization", for such "foreign cyber liability loss" because of its "financial interest" in that "foreign insured organization". For purposes of this insurance, amounts we reimburse under:

   **(1)** Paragraph **a.** of the definition of "foreign cyber liability loss" will be deemed to be sums that such Named Insured must pay, or becomes legally obligated to pay, as "damages" under "your CyberFirst liability coverage forms"; and

   **(2)** Paragraph **b.** of the definition of "foreign cyber liability loss" will be deemed to be "defense expenses" we pay under "your CyberFirst liability coverage forms".

3. If the CyberFirst Expense Reimbursement Coverage Form is part of your policy, the following is added to Paragraph **1., Insuring Agreements**, of **SECTION I – CYBER FIRST-PARTY COVERAGES**:

   In the event of a "foreign cyber first-party loss" incurred, paid or sustained by a "foreign insured organization", we will reimburse the first Named Insured, or any other Named Insured that is not a "foreign insured organization", for such "foreign cyber first-party loss" because of its "financial interest" in that "foreign insured organization".

4. The following is added to Paragraph **2., Conditions Applying To The Liability Coverages Provided Under Your CyberFirst Coverage Forms**, of **SECTION V – CYBER CONDITIONS** in the **CYBERFIRST GENERAL PROVISIONS FORM**:

   **Duties In The Event Of A Claim Or Suit For Foreign Cyber Liability Loss**

   In the event of a "claim" or "suit" for "foreign cyber liability loss" made or brought against a "foreign insured organization", or any other insured for whom such "foreign insured organization" is liable, the first Named Insured must:

PR T5 20 01 17

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 1 of 2

CYBERFIRST

**(1)** Arrange to investigate and defend such "claim" or "suit";

**(2)** Notify us in writing in advance of any proposed settlement of such "claim" or "suit"; and

**(3)** Comply with all other conditions of this insurance as if such "claim" or "suit" were made or brought against any insured that is not a "foreign insured organization".

**5.** The following is added to Paragraph **3.**, **Conditions Applying To The First-Party Coverages Provided Under Your CyberFirst Expense Reimbursement Coverage Form,** of **SECTION V – CYBER CONDITIONS** in the **CYBERFIRST GENERAL PROVISIONS FORM:**

**Duties In The Event Of A First-Party Incident That Causes A Foreign Cyber First-Party Loss**

In the event a "first-party incident" causes "foreign cyber first-party loss", the first Named Insured must comply with all conditions of this policy as if the insured that incurred, paid or sustained such "foreign cyber first-party loss" is not a "foreign insured organization".

**6.** The following is added to **SECTION VII – DEFINITIONS** in the **CYBERFIRST GENERAL PROVISIONS FORM:**

"Financial interest" means the insurable interest in a "foreign insured organization" because of:

**a.** Sole ownership of, or majority ownership interest in, such "foreign insured organization", either directly or through one or more intervening subsidiaries;

**b.** Indemnification of, or an obligation to indemnify:

**(1)** Such "foreign insured organization"; or

**(2)** Any other insured for whom such "foreign insured organization" is liable;

for a "foreign cyber first-party loss" or "foreign cyber liability loss"; or

**c.** An obligation to obtain insurance for such "foreign insured organization".

"Foreign cyber first-party loss" means loss to which the insurance provided under the CyberFirst Expense Reimbursement Coverage Form, if part of

your policy, would have applied but for the fact that the insured that incurred or paid such loss is located in any country or jurisdiction in which we are not licensed to provide such insurance and where providing such insurance would violate the laws or regulations of such country or jurisdiction.

"Foreign cyber liability loss" means:

**a.** Sums that an insured must pay, or becomes legally obligated to pay, as "damages" because of loss to which the insurance provided under "your CyberFirst liability coverage form" would have applied; or

**b.** "Defense expenses" that we would have paid in connection with any "claim" or "suit" against an insured or your indemnitee that we would have defended;

but for the fact that such insured or indemnitee is located in any country or jurisdiction in which we are not licensed to provide "your CyberFirst liability coverage forms" and where providing "your CyberFirst liability coverage forms" would violate the laws or regulations of such country or jurisdiction.

"Foreign insured organization" means any organization that:

**a.** Is an insured under this insurance; and

**b.** Is located in a country or jurisdiction in which we are not licensed to provide this insurance and where providing this insurance would violate the laws or regulations of such country or jurisdiction.

**7.** The following is added to the Common Policy Conditions:

**Prohibited Coverage – Trade Or Economic Sanctions**

We will provide coverage for any loss, or otherwise will provide any benefit, only to the extent that providing such coverage or benefit does not expose us or any of our affiliated or parent companies to:

**1.** Any trade or economic sanction under any law or regulation of the United States of America; or

**2.** Any other applicable trade or economic sanction, prohibition or restriction.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
**PR T5 20 01 17**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF CRIMINAL, DISHONEST, FRAUDULENT OR MALICIOUS WRONGFUL ACTS, OR KNOWING VIOLATIONS OF RIGHTS OR LAWS EXCLUSION

This endorsement modifies insurance provided under the following:

CYBERFIRST GENERAL PROVISIONS FORM

The following replaces Exclusion **a., Criminal, Dishonest, Fraudulent Or Malicious Wrongful Acts, Or Knowing Violations Of Rights Or Laws,** in Paragraph **2., Exclusions Applying To All Coverages Provided Under Your CyberFirst Coverage Forms,** of **SECTION I – COVERAGE:**

**a. Criminal, Dishonest, Fraudulent Or Malicious Wrongful Acts, Or Knowing Violations Of Rights Or Laws**

Loss arising out of any criminal, dishonest, fraudulent or malicious act or omission, or any knowing violation of rights or laws, committed:

**(1)** By the insured; or

**(2)** With the consent or knowledge of a "described authorized person".

For the purpose of the insurance provided under "your CyberFirst liability coverage forms", this exclusion does not apply to our duty to defend that insured until it has been determined in a final, non-appealable adjudication in the underlying action, or admitted in a legal proceeding, that such act or omission, or knowing violation was committed:

**(1)** By the insured; or

**(2)** With the consent or knowledge of a "described authorized person".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF DAMAGES DEFINITION

This endorsement modifies insurance provided under the following:

CYBERFIRST GENERAL PROVISIONS FORM

The following replaces Paragraph **b.(11)** of the definition of "damages" in the **DEFINITIONS** Section:

**(11)** Punitive damages, unless such damages are insurable under the law that is most favorable to the insurability of punitive damages.

 © 2017 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF SEPARATION OF INSUREDS CONDITION – ROGUE EMPLOYEE

This endorsement modifies insurance provided under the following:

CYBERFIRST GENERAL PROVISIONS FORM

## PROVISIONS

1. The following replaces Paragraph **1.d.**, **Separation Of Insureds**, of **SECTION V – CYBER CONDITIONS**:

   **d. Separation Of Insureds**

   Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

   **(1)** As if each Named Insured were the only Named Insured; and

   **(2)** Separately to each insured against whom a "claim" is made or "suit" is brought.

   No fact pertaining to, knowledge possessed by, or conduct of an insured person, including a "rogue employee", will be imputed to any other insured person, and only facts pertaining to, knowledge possessed by or conduct of an "executive officer" will be imputed to you to determine the applicability of any exclusion contained in "your CyberFirst coverage forms".

2. The following is added to the **DEFINITIONS** Section:

   "Rogue employee" means an "employee" who, maliciously, fraudulently, dishonestly or criminally causes a "wrongful act".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF ACT OF CYBER EXTORTION DEFINITION

This endorsement modifies insurance provided under the following:

CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM

The following replaces the definition of "act of cyber extortion" in the **DEFINITIONS** Section:

"Act of cyber extortion" means any threat made to you, by a person or organization expressing an intention to:

**a.** Cause you to transfer, pay or deliver any funds or property using "your computer or communications network" without your permission, authorization and consent;

**b.** Sell or disclose information about your customer, which is unique to the relationship of the customer and you and is not otherwise publicly available, provided such information is stored in an electronic medium in "your computer or communications network" and is retrievable in a perceivable form;

**c.** Access, alter, damage or destroy any computer program, software or other electronic data that is stored within "your computer or communications network";

**d.** Maliciously or fraudulently introduce a "computer virus" into "your computer or communications network" when such threat is premised upon actual or alleged unauthorized access to "your computer or communications network"; or

**e.** Initiate an intentional attack on "your computer or communications network" that depletes system resources or impedes system access available through the Internet to "authorized users" of "your computer or communications network";

provided that such threat is made for the purpose of demanding "money", "securities", property or services.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF BUSINESS INCOME LOSS DEFINITIONS

This endorsement modifies insurance provided under the following:

CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM

## PROVISIONS

**1.** The following replaces the definition of "business income loss" in the **DEFINITIONS** Section:

"Business income loss" means:

**a.** Net profit before income taxes that you would have earned; or

**b.** Net loss before income taxes that you would not have incurred or would have avoided;

if there had been no "computer system disruption" but only with respect to your business operations that are dependent on "your computer or communications network"; and

**c.** Continuing normal operating expenses incurred by you (including payroll), but only to the extent that such operating expenses must necessarily continue during the "business interruption period of restoration", and such expenses would have been incurred by you had such "computer system disruption" not occurred.

**2.** The following replaces the definition of "IT provider contingent business income loss" in the **DEFINITIONS** Section:

"IT provider contingent business income loss" means, only with respect to your business operations that are dependent on an "IT provider":

**a.** Net profit before income taxes that you would have earned; or

**b.** Net loss before income taxes that you would not have incurred or would have avoided;

if there had been no "disruption" to that "IT provider's" "system"; and

**c.** Continuing normal operating expenses incurred by you (including payroll), but only to the extent that such operating expenses must necessarily continue during the "IT provider contingent business interruption period of restoration", and such expenses would have been incurred by you had such "disruption" to that "IT provider's" "system" not occurred.

**3.** The following replaces the definition of "outsource provider contingent business income loss" in the **DEFINITIONS** Section:

"Outsource provider contingent business income loss" means:

**a.** Net profit before income taxes that you would have earned; or

**b.** Net loss before income taxes that you would not have incurred or would have avoided;

if there had been no "disruption" to that "outsource provider's" "system"; and

**c.** Continuing normal operating expenses incurred by you (including payroll), but only to the extent that such operating expenses must necessarily continue during the "Outsource provider contingent business interruption period of restoration", and such expenses would have been incurred by you had such "disruption" to that "outsource provider's" "system" not occurred.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF BUSINESS INTERRUPTION PERIOD OF RESTORATION DEFINITION – 180 DAYS

This endorsement modifies insurance provided under the following:

CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM

## PROVISIONS

1. The following replaces the definition of "business interruption period of restoration" in the **DEFINITIONS** Section:

   "Business interruption period of restoration" means the period of time that:

   a. Begins with the date and time that "your computer or communications network" has been first interrupted by a "computer system disruption" and after application of the "business interruption expenses waiting period"; and

   b. Ends with the earlier of:

      (1) The date and time "your computer or communications network" is restored to substantially the level of operation that had existed prior to the "computer system disruption"; or

      (2) 180 days from the date and time that "your computer or communications network" was first interrupted by such "computer system disruption".

2. The following replaces the definition of "IT provider contingent business interruption period of restoration" in the **DEFINITIONS** Section:

   "IT provider contingent business interruption period of restoration" means the period of time that:

   a. Begins with the date and time that the impairment of your business activities which are directly attributable to a "disruption" to an "IT provider's" "system" is first known by any "described authorized person" and after application of the "IT provider contingent business interruption expenses waiting period"; and

   b. Ends with the earlier of:

      (1) The date and time your business activities are restored to substantially the level of operation that had existed prior to the "disruption" to the "IT provider's" "system"; or

      (2) 180 days from the date and time that such impairment of your business activities was first known by any "described authorized person".

3. The following replaces the definition of "outsource provider contingent business interruption period of restoration" in the **DEFINITIONS** Section:

   "Outsource provider contingent business interruption period of restoration" means the period of time that:

   a. Begins with the date and time that the impairment of your business activities which are directly attributable to a "disruption" to an "outsource provider's" "system" is first known by any "described authorized person" and after application of the "outsource provider contingent business interruption expenses waiting period"; and

   b. Ends with the earlier of:

      (1) The date and time your business activities are restored to substantially the level of operation that had existed prior to the "disruption" to the "outsource provider's" "system"; or

      (2) 180 days from the date and time that such impairment of your business activities was first known by any "described authorized person".

© 2017 The Travelers Indemnity Company. All rights reserved.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF CLAIM DEFINITION

This endorsement modifies insurance provided under the following:

CYBERFIRST GENERAL PROVISIONS FORM

The following replaces Paragraph **a.** of the definition of "claim" in the **DEFINITIONS** Section:

**a.** A written demand that seeks "damages" or non-monetary relief; or

PR T5 56 10 17         © 2017 The Travelers Indemnity Company. All rights reserved.         Page 1 of 1

CYBERFIRST

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# STATE INCONSISTENCY CONDITION ENDORSEMENT

This endorsement modifies insurance provided under the following:

CYBERFIRST GENERAL PROVISIONS FORM


The following is added to Paragraph **1., Conditions Applying To All Coverages Provided Under Your CyberFirst Coverage Forms,** of **SECTION V – CYBER CONDITIONS:**

**State Inconsistency**

If there is an inconsistency between a term or condition in a state amendatory endorsement attached to this policy and any other term or condition of this policy, where permitted by law we will apply the term or condition that is more favorable to you.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COVERAGE – REIMBURSE OR PAY ON BEHALF

This endorsement modifies insurance provided under the following:

CYBERFIRST GENERAL PROVISIONS FORM
CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM

## PROVISIONS

**1.** The following replaces Paragraph **a.(1)** of Paragraph **1., Insuring Agreements,** of **SECTION I – CYBER FIRST-PARTY COVERAGES** in the **CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM:**

**(1)** We will reimburse you for, or pay on your behalf, loss to which this insurance applies that is "your security breach notification and remediation expenses" that are directly attributable to a "security breach" that:

**2.** The following replaces Paragraph **b.(1)** of Paragraph **1., Insuring Agreements,** of **SECTION I – CYBER FIRST-PARTY COVERAGES** in the **CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM:**

**(1)** We will reimburse you for, or pay on your behalf, loss to which this insurance applies that is "your crisis management service expenses" that are:

**3.** The following replaces Paragraph **d.(1)** of Paragraph **1., Insuring Agreements,** of **SECTION I – CYBER FIRST-PARTY COVERAGES** in the **CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM:**

**(1)** We will reimburse you for, or pay on your behalf, loss to which this insurance applies that is "your cyber extortion expenses" that are directly attributable to an "act of cyber extortion" that:

**4.** The following replaces Paragraph **e.(1)** of Paragraph **1., Insuring Agreements,** of **SECTION I – CYBER FIRST-PARTY COVERAGES** in the **CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM:**

**(1)** We will reimburse you for, or pay on your behalf, loss to which this insurance applies that is "your restoration expenses" that are directly attributable to a "computer violation" that:

**5.** The following replaces Paragraph **h.(1)** of Paragraph **1., Insuring Agreements,** of **SECTION I – CYBER FIRST-PARTY COVERAGES** in the **CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM:**

**(1)** We will reimburse you for, or pay on your behalf, loss to which this insurance applies that is "your telecommunications theft loss" that is directly attributable to a "telecommunications theft" that:

**6.** The following replaces Paragraph **2.a.** of **SECTION IV – RETENTIONS** in the **CYBERFIRST GENERAL PROVISIONS FORM:**

**a.** If any of "your cyber first-party loss" is provided on a:

**(1)** Pay on behalf of basis, we will not pay such loss on your behalf; or

**(2)** Reimbursement basis, we will not reimburse you for such loss;

until the amount of such loss exceeds the applicable retention shown in the CyberFirst Declarations.

© 2017 The Travelers Indemnity Company. All rights reserved.

CYBERFIRST

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COVERAGE – WHO IS AN INSURED – NEWLY ACQUIRED ORGANIZATIONS – 35% OR LESS OF YOUR GROSS REVENUE

This endorsement modifies insurance provided under the following:

CYBERFIRST GENERAL PROVISIONS FORM

The following replaces the first paragraph of Paragraph **4.** of **SECTION II – WHO IS AN INSURED:**

**4.** Any organization you acquire, other than a partnership or joint venture, is a Named Insured if there is no other insurance which provides similar coverage to that organization. However, if such organization has gross revenue greater than 35% of your gross revenue at the time of such acquisition, coverage under this provision is provided to such organization only:

**a.** Until the 90th day after you acquire the organization or the end of the policy period, whichever is earlier, if you do not report such organization in writing to us within 90 days after you acquire it; or

**b.** Until the end of the policy period, when that date is later than 90 days after you acquire such organization, if you report such organization in writing to us within 90 days after you acquire it and we agree in writing that it will continue to be a Named Insured until the end of the policy period.

PR T5 59 10 17        © 2017 The Travelers Indemnity Company. All rights reserved.        Page 1 of 1

CYBERFIRST

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF DUTIES IN THE EVENT OF A FIRST-PARTY INCIDENT CONDITION

This endorsement modifies insurance provided under the following:

CYBERFIRST GENERAL PROVISIONS FORM

The following is added to Paragraph **3.a., Duties In The Event Of A First-Party Incident**, of **SECTION V – CYBER CONDITIONS:**

However, if any fact or information regarding a "first-party incident" is subject to a court order or law enforcement instruction, you must give to us written notice of the particulars of such "first-party incident" as soon as practicable after such order or instruction is no longer in effect.

CYBERFIRST

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF MONEY DEFINITION

This endorsement modifies insurance provided under the following:

CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM


**PROVISIONS**

**1.** The following is added to the definition of "money" in the **DEFINITIONS** Section:

"Money" also means "virtual currency".

**2.** The following is added to the **DEFINITIONS** Section:

"Virtual currency" means a digital or electronic medium of exchange that is used and accepted as a means of payment, but that is not issued by, or guaranteed by, a central bank, government or public authority.

CYBERFIRST

POLICY NUMBER: ██████4173-20-I5                    ISSUE DATE: 02/05/20

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUSINESS INTERRUPTION AND ADDITIONAL EXPENSES COVERAGE – SYSTEM FAILURE

This endorsement modifies insurance provided under the following:

CYBERFIRST GENERAL PROVISIONS FORM
CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM

### SCHEDULE OF SYSTEM FAILURE LIMIT OF INSURANCE AND WAITING PERIOD

|  | Limit | Waiting Period |
|---|---|---|
| **System Failure** | $1,000,000 | 24 HOURS |

## PROVISIONS

**1.** The following is added to Paragraph **1.**, of **SECTION I – CYBER FIRST-PARTY COVERAGES** in the **CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM:**

**Business Interruption And Additional Expenses – System Failure Coverage**

We will reimburse you for loss to which this insurance applies that is:

**(a)** "Your system failure business interruption expenses" directly attributable to a "system failure", only if such "system failure":

   **(1)** Occurs during the policy period; and

   **(2)** Is known by any "described authorized person" during the policy period or within 90 days after the end of the policy period.

**(b)** Each "system failure" in a series of "related" "system failures" will be deemed to have occurred on the date the first such "system failure" in that series occurs.

**(c)** A "described authorized person" will be deemed to first know about a "system failure" when such person first becomes aware of facts that would cause a reasonable person to assume that "your system failure business interruption expenses" have been or will be incurred, regardless of when such "system failure" occurred, even though the exact amount or details of such expenses may not then be known.

**2.** The following exclusions are added to Paragraph **2.**, **Exclusions**, of **SECTION – I CYBER FIRST-PARTY COVERAGES** in the **CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM:**

**Exclusions Applying To Business Interruption And Additional Expenses – System Failure Coverage**

The following exclusions apply to Business Interruption And Additional Expenses Coverage - System Failure Coverage under this coverage form.

This insurance does not apply to:

**1. Infrastructure Failure**

   Loss arising out of the failure of infrastructure that is not under the control of the insured, including:

   **(a)** Satellite failure;

   **(b)** Electrical or mechanical failures or interruption, including electrical disturbance, spike, brownout, or blackout; or

   **(c)** Gas, water or other utilities;

   **(d)** Telephone, cable, telecommunications; or

   **(e)** The Internet.

**2. Labor Disputes**

   Loss arising out of any labor dispute or strikes.

**3. Wear And Tear**

   Loss arising out of wear and tear, rust, corrosion, erosion, deterioration, extremes of temperature or humidity, or any other physical event or peril however caused.

**3.** The following is added to Paragraph **4.** of **SECTION III – LIMITS OF INSURANCE** in the **CYBERFIRST GENERAL PROVISIONS FORM:**

The System Failure Limit Of Insurance shown in the Schedule Of System Failure Limit Of Insurance And Waiting Period is the most we will pay for the sum of all "your system failure business

PR T5 63 10 17          © 2017 The Travelers Indemnity Company. All rights reserved.          Page 1 of 2

CYBERFIRST

interruption expenses" for the combined total of all "system failures".

**4.** The following is added to the definition of "first-party incident" in the **DEFINITIONS** Section in the **CYBERFIRST GENERAL PROVISIONS FORM:**

A "system failure".

**5.** The following are added to the **DEFINITIONS** Section in the **CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM:**

"System failure" means an unintentional or unplanned outage of "your computer or communications network", provided it does not include unintentional or unplanned outage resulting from a "computer system disruption".

"System failure business income loss" means:

**a.** Net profit before income taxes that you would have earned; or

**b.** Net loss before income taxes that you would not have incurred or would have avoided;

if there had been no "system failure", but only with respect to your business operations that are dependent on "your computer or communications network"; and

**c.** Continuing normal operating expenses incurred by you (including payroll), but only to the extent that such operating expenses must necessarily continue during the "system failure business interruption period of restoration".

"System failure business interruption period of restoration" means the period of time that:

**a.** Begins with the date and time that "your computer or communications network" has been first interrupted by a "system failure" and after application of the "system failure expenses waiting period"; and

**b.** Ends with the earlier of:

(1) The date and time "your computer or communications network" is restored to substantially the level of operation that had existed prior to the "system failure"; or

(2) Thirty days from the date and time that "your computer or communications network" was first interrupted by such "system failure".

"System failure expenses waiting period" means the number of consecutive hours shown as the System Failure Expenses Waiting Period in the Schedule Of System Failure Limit Of Insurance And Waiting Period that must elapse after the actual and measurable interruption or suspension of your business directly attributable to a "system failure".

"System failure extra expense" means necessary expenses incurred by you, with our prior written consent, and directly attributable to a "system failure", but only to the extent such expenses:

**a.** Exceed your normal operating expenses;

**b.** Reduce "system failure business income loss"; and

**c.** Would not have been incurred if there had been no "system failure".

"Your system failure business interruption expenses":

**a.** Means the sum of "system failure business income loss" and "system failure extra expense" sustained during the "system failure business interruption period of restoration".

**b.** Does not include:

(1) Contractual penalties of any nature.

(2) Costs or expenses incurred to identify or remediate computer system errors or vulnerabilities.

(3) Any other consequential loss or damage.

(4) Legal cost or legal expense of any nature.

(5) Loss arising out of liability to any person or organization that is not an insured.

(6) Bank interest or investment income.

     © 2017 The Travelers Indemnity Company. All rights reserved.     PR T5 63 10 17

CYBERFIRST

POLICY NUMBER: ████4173-20-I5                    ISSUE DATE: 02/05/20

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# REPUTATIONAL HARM EXPENSES COVERAGE

This endorsement modifies insurance provided under the following:

CYBERFIRST GENERAL PROVISIONS FORM
CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM

**SCHEDULE OF REPUTATIONAL HARM EXPENSES LIMIT OF INSURANCE AND RETENTION**

|  | Limit | Retention |
|---|---|---|
| Reputational Harm Expenses | $100,000 | $10,000 |

## PROVISIONS

### A. REPUTATIONAL HARM EXPENSES COVERAGE

1. The following is added to Paragraph **1., Insuring Agreements**, of **SECTION I – CYBER FIRST–PARTY COVERAGES** in the **CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM**:

   **Reputational Harm Expenses Coverage**

   We will reimburse you for loss to which this insurance applies that is "your reputational harm expenses" that are directly attributable to a "security breach":

   (a) That is caused by a "network and information security wrongful act" committed on or after the Network And Information Security Retroactive Date shown in the CyberFirst Declarations and before the end of the policy period; and

   (b) For which "notification" is provided and reimbursed to you by us pursuant to Security Breach Notification And Remediation Expenses Coverage.

2. The following exclusion is added to Paragraph **2., Exclusions**, of **SECTION I – CYBER FIRST–PARTY COVERAGES** in the **CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM**:

   **Exclusion Applying To Reputational Harm Expenses Coverage**

   The following exclusion applies to the Reputational Harm Expenses Coverage provided under this coverage form.

   This insurance does not apply to:

   **Prize Discounts, Prizes, Awards, Coupons, Or Any Other Valuable Consideration Given In Excess Of The Contracted Or Expected Amount**

   Loss arising out of prize discounts, prizes, awards, coupons, or any other valuable consideration given in excess of the contracted or expected amount.

3. The following is added to the definition of "first-party incident" in **SECTION VII – DEFINITIONS** of the **CYBERFIRST GENERAL PROVISIONS FORM**:

   With respect to Reputational Harm Expenses Coverage, "first-party incident" means a "network and information security wrongful act".

### B. LIMITS OF INSURANCE

The following is added to **SECTION III – LIMITS OF INSURANCE** in the **CYBERFIRST GENERAL PROVISIONS FORM**:

**Reputational Harm Expenses Limit Of Insurance**

The Reputational Harm Expenses Limit Of Insurance shown in the Schedule Of Reputational Harm Expenses Limit Of Insurance And Retention is the most we will pay for the sum of all of "your reputational harm expenses" for the combined total of all "security breaches" for which "your notification expenses" are reimbursed to you by us. Such expenses are within, and not in addition to, the Aggregate Limit.

If no amount is shown for the Reputational Harm Expenses Limit Of Insurance in the Schedule Of Reputational Harm Expenses Limit Of Insurance And Retention, that Limit is $100,000.

### C. RETENTION

The following is added to Paragraph **2., First–Party Coverages**, of **SECTION IV – RETENTIONS** in the **CYBERFIRST GENERAL PROVISIONS FORM**:

**Reputational Harm Expenses Retention**

We will not reimburse you for any of "your reputational harm expenses" until the amount of such expenses exceeds

PR T5 64 06 18          © 2018 The Travelers Indemnity Company. All rights reserved.          Page 1 of 2

the Reputational Harm Expenses Retention, shown in the Schedule Of Reputational Harm Expenses Limit Of Insurance And Retention. Such retention applies to all of "your reputational harm expenses" caused by the same "security breach" or "related" "security breaches".

**D. CONDITION**

The following is added to Paragraph **3., Conditions Applying To The First-Party Coverages Provided Under The CyberFirst Expense Reimbursement Coverage Form**, of **SECTION V – CYBER CONDITIONS** in the **CYBERFIRST GENERAL PROVISIONS FORM:**

**Appraisal – Reputational Harm Expenses**

If we and you disagree on the amount of "your reputational harm expenses", either may make a written demand for an appraisal of such expenses. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will pay its chosen appraiser and bear the other expenses of the appraisal and umpire equally.

**E. DEFINITIONS**

The following is added to **SECTION II – DEFINITIONS** in the **CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM:**

"Notification" means any communication to notify the persons whose "identity information" was accessed or acquired without their authorization, whether such notification is provided on a voluntary basis or to comply with any "security breach notification law" that applies to you.

"Period of indemnity" means the 30-day period beginning with the date and time that "notification" was provided.

"Your reputational harm expenses":

**a.** Means, before income taxes, net profit you were prevented from earning during the "period of indemnity" due to damage to your reputation directly caused by a "network and information security wrongful act".

**b.** Does not include:

**(1)** Contractual penalties of any nature;

**(2)** Costs or expenses incurred to update, restore, replace or otherwise improve "your computer or communications system" to a level of functionality beyond that which existed prior to the loss event;

**(3)** Costs or expenses incurred to identify or remediate computer system errors or vulnerabilities;

**(4)** Any other consequential loss or damage;

**(5)** Legal cost or legal expense of any nature;

**(6)** Loss arising out of liability to any person or entity that is not an insured;

**(7)** Bank interest or investment income;

**(8)** Loss incurred as a result of unfavorable business conditions or loss of market; or

**(9)** Your internal salary, costs or overhead expenses.

      © 2018 The Travelers Indemnity Company. All rights reserved.      **PR T5 64 06 18**

POLICY NUMBER: ████4173-20-I5                     ISSUE DATE: 02/05/20

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SOCIAL ENGINEERING FRAUD EXPENSES COVERAGE

This endorsement modifies insurance provided under the following:

CYBERFIRST GENERAL PROVISIONS FORM
CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM

### SCHEDULE OF SOCIAL ENGINEERING FRAUD EXPENSES LIMIT OF INSURANCE AND RETENTION

|  | Limit | Retention |
|---|---|---|
| Social Engineering Fraud Expenses | $100,000 | $10,000 |

## PROVISIONS

### A. SOCIAL ENGINEERING FRAUD EXPENSES COVERAGE

1. The following is added to Paragraph **1., Insuring Agreements**, of **SECTION I – CYBER FIRST-PARTY COVERAGES** in the **CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM:**

**Social Engineering Fraud Expenses Coverage**

We will reimburse you for loss to which this insurance applies that is "your social engineering fraud expenses" that are directly attributable to "social engineering fraud" you first have knowledge of during the policy period.

2. The following exclusions are added to Paragraph **2., Exclusions**, of **SECTION I – CYBER FIRST-PARTY COVERAGES** in the **CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM:**

**Exclusions Applying To Social Engineering Fraud Expenses Coverage**

The following exclusions apply to the Social Engineering Fraud Expenses Coverage provided under this coverage form.

This insurance does not apply to:

**Computer Fraud, Funds Transfer Fraud Or Theft By An Employee**

Loss arising out of "computer fraud", "funds transfer fraud" or theft by an "employee".

**Securities, Or Ownership In Any Corporation, Partnership, Real Property, Or Similar Instrument**

Loss arising out of any investment in "securities", or ownership in any corporation, partnership, real property, or similar instrument, whether or not such investment is genuine.

**Products Or Service**

Loss arising out of any failure, malfunction, illegitimacy, inappropriateness or inadequacy of any product or service.

**Failure To Perform**

Loss arising out of the failure of any party to perform in whole or in part under any contract.

**Non-Payment Or Default Upon Any Loan**

Loss arising out of any non-payment of or default upon any loan, extension of credit, or similar promise to pay.

**Use Of Or Acceptance Of Any Credit**

Loss arising out of any party's use of or acceptance of any credit, debit or charge card, or any access, convenience, identification, stored value, or other similar card or instrument, including the information contained on such card or instrument, whether or not genuine.

**Items Of Deposit**

Loss arising out of items of deposit which are not finally paid for any reason, including forgery or any other fraud.

This exclusion does not apply to United States Government checks or drafts that are returned by the United States Government for any reason after the funds for said checks or drafts have been credited to your account at a financial institution.

3. The following is added to the definition of "first-party incident" in **SECTION VII – DEFINITIONS** of the **CYBERFIRST GENERAL PROVISIONS FORM:**

With respect to Social Engineering Fraud Expenses Coverage, "first-party

PR T5 65 06 18          © 2018 The Travelers Indemnity Company. All rights reserved.          Page 1 of 2

incident" means "social engineering fraud".

## B. LIMITS OF INSURANCE

The following is added to **SECTION III – LIMITS OF INSURANCE** in the **CYBERFIRST GENERAL PROVISIONS FORM:**

### Social Engineering Fraud Expenses Limit Of Insurance

The Social Engineering Fraud Expenses Limit Of Insurance shown in the Schedule Of Social Engineering Fraud Expenses Limit Of Insurance And Retention is the most we will pay for the sum of all of "your social engineering fraud expenses" for the combined total of all "social engineering frauds". Such expenses are within, and not in addition to, the Aggregate Limit.

If no amount is shown for the Social Engineering Fraud Expenses Limit Of Insurance in the Schedule Of Social Engineering Fraud Expenses Limit Of Insurance And Retention, that limit is $100,000.

## C. RETENTION

The following is added to Paragraph **2., First-Party Coverages,** of **SECTION IV – RETENTIONS** in the **CYBERFIRST GENERAL PROVISIONS FORM:**

### Social Engineering Fraud Expenses Retention

We will not reimburse you for any of "your social engineering fraud expenses" until the amount of such expenses exceeds the Social Engineering Fraud Expenses Retention, shown in the Schedule Of Social Engineering Fraud Expenses Limit Of Insurance And Retention. Such retention applies to all of "your social engineering fraud expenses" caused by the same "social engineering fraud" or "related" "social engineering frauds".

## D. DEFINITIONS

The following is added to **SECTION II – DEFINITIONS** in the **CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM:**

"Client" means a person or entity to whom you provide goods, or perform services, for a fee or under a written agreement.

"Social engineering fraud" means the intentional misleading of an "employee" or executive officer using an instruction that:

**a.** Purports to be from a "vendor", "client", "employee" or executive officer;

**b.** Directs the "employee" to transfer, pay, or deliver "money" or "securities";

**c.** Contains a misrepresentation of material fact; and

**d.** Is relied upon by the "employee", believing the material fact to be true.

"Vendor" means a person or entity that provides goods or services to you under an agreement.

"Your social engineering fraud expenses" means your direct loss of "money" or "securities" directly caused by "social engineering fraud".

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COMPUTER SYSTEM DISRUPTION DEFINITION – VOLUNTARY SHUTDOWN

This endorsement modifies insurance provided under the following:

CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM

The following replaces the definition of "computer system disruption" in **SECTION II – DEFINITIONS**:

"Computer system disruption":

**a.** Means:

**(1)** The actual and measurable interruption, suspension or failure of "your computer or communications network" directly attributable to:

**(a)** A "computer violation"; or

**(b)** An intentional attack on "your computer or communications network" with protocols or instructions transmitted over the Internet or another computer or communications network, which triggers the use of "your computer or communications network's" resources to the extent that the capacity of those resources to accommodate "authorized users" of "your computer or communications network" is depleted or diminished;

**(2)** The voluntary shutdown of "your computer or communications network" by you, if it is reasonably necessary to minimize "your business interruption loss" caused by a "computer violation" or an intentional attack on "your computer or communications network", in progress.

**b.** Does not include a measurable interruption, suspension, or failure of a third party computer system or network.

CYBERFIRST

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BRICKED EQUIPMENT COVERAGE

This endorsement modifies insurance provided under the following:

CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM

## PROVISIONS

1. The following is added to the definition of "extra expense" in **SECTION II – DEFINITIONS:**

   "Extra expense" includes such reasonable costs incurred by you, with our written consent, to replace any "bricked equipment" with functionally equivalent equipment, if such "bricked equipment" is inoperable:

   a. Directly as a result of a "security breach"; and

   b. If reasonable attempts to restore such "bricked equipment" fail.

   Such costs may include newer versions or models of such "bricked equipment".

2. The following is added to **SECTION II – DEFINITIONS:**

   "Bricked equipment" means any inoperable computer, input, output, processing, storage or communication device that you, or an "employee" while authorized by you and transacting business on your behalf:

   a. Rent, lease, license or borrow from others; or

   b. Own or operate.

3. The following is added to exclusion **a.(5)**, Property Damage, in Paragraph **2.**, of **SECTION I – CYBER FIRST – PARTY COVERAGES:**

   This exclusion does not apply to "your business interruption expenses", "your IT provider contingent business interruption expenses" or "your outsource provider contingent business interruption expenses" resulting from "bricked equipment".

CYBERFIRST

POLICY NUMBER: ██████4173-20-I5                    ISSUE DATE: 02/05/20

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VENDOR OR CLIENT PAYMENT FRAUD COVERAGE

This endorsement modifies insurance provided under the following:

CYBERFIRST GENERAL PROVISIONS FORM
CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM

## SCHEDULE OF VENDOR OR CLIENT PAYMENT FRAUD EXPENSES
## LIMIT OF INSURANCE AND RETENTION

|  | **Limit** | **Retention** |
|---|---|---|
| Vendor Or Client Payment Fraud Expenses | $100,000 | $10,000 |

**PROVISIONS**

**A. VENDOR OR CLIENT PAYMENT FRAUD EXPENSES COVERAGE**

1. The following is added to Paragraph **1., Insuring Agreements,** of **SECTION I – CYBER FIRST–PARTY COVERAGES** in the **CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM:**

   **Vendor Or Client Payment Fraud Expenses Coverage**

   We will reimburse you for loss to which this insurance applies that is "your vendor or client payment fraud expenses" that arise out of the unauthorized access to "your computer or communications network" you first have knowledge of during the policy period.

2. The following is added to exclusion **b.(4), Forged, Altered Or Fraudulent Negotiable Instruments** in Paragraph **2.,** of **SECTION I – CYBER FIRST–PARTY COVERAGES** in the **CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM:**

   This exclusion does not apply to Vendor Or Client Payment Fraud Expenses Coverage.

3. The following is added to condition **c., Ownership Of Property And Interests Covered** in Paragraph **3.,** of **SECTION V – CYBER CONDITIONS** in the **CYBERFIRST GENERAL PROVISIONS FORM:**

   This condition does not apply to the Vendor Or Client Payment Fraud Expenses Coverage.

4. The following condition is added to Paragraph **3., Conditions Applying To The First–Party Coverages Provided Under The CyberFirst Expense Reimbursement Coverage Form,** of **SECTION V – CYBER CONDITIONS** in the **CYBERFIRST GENERAL PROVISIONS FORM:**

   **Ownership Of Property And Interests Covered – Vendor Or Client Payment Fraud**

   The property covered under the Vendor Or Client Payment Fraud Expenses Coverage is limited to:

   **(1)** "Money" owed to you but not collected for services rendered or goods delivered to a "client", or

   **(2)** The amount you paid a "vendor" for goods or services you did not receive.

5. The following is added to the definition of "first-party incident" in **SECTION VII – DEFINITIONS** of the **CYBERFIRST GENERAL PROVISIONS FORM:**

   With respect to Vendor Or Client Payment Fraud Expenses Coverage, "first-party incident" means "vendor or client payment fraud".

6. The following is added to the definition of "computer fraud" in **SECTION II – DEFINITIONS** in the **CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM:**

   "Computer fraud" does not include "vendor or client payment fraud".

7. The following is added to the definition of "funds transfer fraud" in **SECTION II – DEFINITIONS** in the **CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM:**

   "Funds transfer fraud" does not include "vendor or client payment fraud".

**B. LIMITS OF INSURANCE**

The following is added to **SECTION III – LIMITS OF INSURANCE** in the **CYBERFIRST GENERAL PROVISIONS FORM:**

CYBERFIRST

**Vendor Or Client Payment Fraud Expenses Limit Of Insurance**

The Vendor Or Client Payment Fraud Expenses Limit Of Insurance shown in the Schedule Of Vendor Or Client Payment Fraud Expenses Limit Of Insurance And Retention is the most we will pay for the sum of all of "your vendor or client payment fraud expenses" for the combined total of all "vendor or client payment frauds". Such expenses are within, and not in addition to, the Aggregate Limit.

If no amount is shown for the Vendor Or Client Payment Fraud Expenses Limit Of Insurance in the Schedule Of Vendor Or Client Payment Fraud Expenses Limit Of Insurance And Retention, that limit is $100,000.

**C. RETENTION**

The following is added to Paragraph **2.**, **First-Party Coverages**, of **SECTION IV – RETENTIONS** in the **CYBERFIRST GENERAL PROVISIONS FORM:**

**Vendor Or Client Payment Fraud Expenses Retention**

We will not reimburse you for any of "your vendor or client payment fraud expenses" until the amount of such expenses exceeds the Vendor Or Client Payment Fraud Expenses Retention, shown in the Schedule Of Vendor Or Client Payment Fraud Expenses Limit Of Insurance And Retention. Such retention applies to all of "your vendor or client payment fraud expenses" that arise out of the same "vendor or client payment fraud" or "related" "vendor or client payment frauds".

**D. DEFINITIONS**

The following is added to **SECTION II – DEFINITIONS** in the **CYBERFIRST EXPENSE REIMBURSEMENT COVERAGE FORM:**

"Client" means a person or entity to whom you:

**a.** Provide goods; or

**b.** Perform services;

for a fee or under a written agreement.

"Vendor" means a person or entity that provides goods or services to you under an agreement.

"Vendor or client payment fraud" means an instruction that intentionally misleads a "vendor" or "client", when such instruction:

**1.** Is not made by an "insured";

**2.** Is purportedly from an "insured";

**3.** Directs such "vendor" to perform services or deliver goods, or such "client" to deliver payment to, an unintended recipient;

**4.** Contains a misrepresentation of material fact; and

**5.** Is relied upon by such "vendor" or "client", believing the material fact to be true.

"Your vendor or client payment fraud expenses" means:

**a.** "Money" owed to you but not collected for services rendered or goods delivered to a "client", or

**b.** The amount you paid a "vendor" for goods or services you did not receive;

directly caused by "vendor or client payment fraud".

          © 2019 The Travelers Indemnity Company. All rights reserved.          **PR T5 89 07 19**

CYBERFIRST

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINNESOTA MANDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

CYBERFIRST GENERAL PROVISIONS FORM

## PROVISIONS

1. The following replaces the **Cancellation** Common Policy Condition:

**Cancellation**

1. The first Named Insured may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy, subject to the provisions of Paragraph **3.** below, by first class mailing, or by delivery, of a written notice of cancellation to the first Named Insured and any agent, to their last mailing addresses known to us. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

3. Policies in Effect

   **a.** Less than 90 Days

   If this policy is a new policy and has been in effect for fewer than 90 days, we may cancel for any reason by giving notice at least:

   **(1)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

   **(2)** 30 days before the effective date of cancellation, if we cancel for any other reason.

   **b.** 90 Days Or More

   If this policy has been in effect for 90 days or more, or if it is a renewal of a policy we issued, we may cancel only for one or more of the following reasons:

   **(1)** Nonpayment of premium;

   **(2)** Misrepresentation or fraud made by you or with your knowledge in obtaining the policy or in pursuing a claim under the policy;

   **(3)** An act or omission by you that substantially increases or changes the risk insured;

   **(4)** Refusal by you to eliminate known conditions that increase

the potential for loss after notification by us that the condition must be removed;

**(5)** Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

**(6)** Loss of reinsurance by us which provided coverage to us for a significant amount of the underlying risk insured. Any notice of cancellation pursuant to this item shall advise the policyholder that he or she has 10 days from the date of receipt of the notice to appeal the cancellation to the commissioner of commerce and that the commissioner will render a decision as to whether the cancellation is justified because of the loss of reinsurance within 30 business days after receipt of the appeal;

**(7)** A determination by the commissioner that the continuation of the policy could place us in violation of the Minnesota insurance laws; or

**(8)** Nonpayment of dues to an association or organization, other than an insurance association or organization, where payment of dues is a prerequisite to obtaining or continuing such insurance. This provision for cancellation for failure to pay dues shall not be applicable to persons who are retired at 62 years of age or older or who are disabled according to social security standards.

Under this Paragraph **3.b.,** we will give you notice at least:

**(1)** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium. The cancellation notice shall contain the information regarding the amount of

CYBERFIRST

premium due and the due date, and shall state the effect of nonpayment by the due date. Cancellation shall not be effective if payment of the amount due is made prior to the effective date of cancellation; or

**(2)** 60 days before the effective date, if we cancel for a reason described in Paragraphs **3.b.(2)** through **(8)** above. The notice of cancellation will state the reason for cancellation.

**4.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**5.** Proof of mailing of any notice shall be sufficient proof of notice.

**2.** The following replaces the **Examination Of Your Books And Records** Common Policy Condition:

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to one year afterward.

**3.** The following replaces Paragraph **1.a., Bankruptcy,** of **SECTION V – CYBER CONDITIONS:**

Bankruptcy, insolvency or dissolution of the insured or of the insured's estate will not relieve us of our obligations under this policy, and in case an execution against the insured on a final judgment is returned unsatisfied, then such judgment creditor shall have a right of action on this policy against the company to the same extent that the insured would have, had the insured paid the final judgment.

**4.** The following is added to Paragraph **1.e., Transfer Of Rights Of Recovery Against Others To Us** of **SECTION V – CYBER CONDITIONS:**

Our rights do not apply against any person or organization insured under this policy with respect to the same "wrongful act".

**5.** The following replaces Paragraph **1.f., When We Do Not Renew,** of **SECTION V – CYBER CONDITIONS:**

**f. When We Do Not Renew**

If we decide not to renew this policy, we may do so by giving the first

Named Insured and any agent written notice of our intent not to renew at least 60 days before the expiration date of this policy. Such notice will be delivered or mailed by first class mail to their last mailing addresses known to us.

Proof of mailing of any notice shall be sufficient proof of notice.

We need not mail or deliver this notice if you have:

**(1)** Insured elsewhere;

**(2)** Accepted replacement coverage; or

**(3)** Agreed not to renew this policy.

**6.** The following condition is added Paragraph **1., Conditions Applying To All Coverages Provided Under Your CyberFirst Coverage Forms,** of **SECTION V – CYBER CONDITIONS:**

**Your Right To Claim And Wrongful Act Information**

We will provide the first Named Insured the following information relating to this policy and any other preceding policy we have issued to you during the previous three years that provides this or similar coverage:

**a.** A list or other record of each "wrongful act", not previously reported to any other insurer, of which we were notified in accordance with the terms and conditions of this policy. We will include the date and brief description of the "wrongful act" if that information was in the notice we received.

**b.** A summary by policy year, of payments made and amounts reserved, stated separately, under any applicable Aggregate Limit.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

You must not disclose this information to any claimant or any claimant's representative without our consent.

If we cancel or decide not to renew this policy, we will provide such information no later than 30 days before the date of policy termination. In other circumstances, we will provide this information without cost only if we receive a request from the first Named Insured. In this case, we will provide this information within 30 days of receipt of the request. We will not provide this information without cost more than once in a 12 month period.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
**PR FO 57 01 17**

We compile claim and "wrongful act" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or nonrenewal will be effective even if we inadvertently provide inaccurate information.

**7.** The following is added to Paragraph **2.a., Duties In The Event Of A Wrongful Act, Claim Or Suit**, of **SECTION V – CYBER CONDITIONS**:

The requirement to notify us can be satisfied by notifying our agent. Notice can be by any means of communication.

**8.** The following is added to Paragraph **3.a., Duties In The Event Of A First-Party Incident**, of **SECTION V – CYBER CONDITIONS**:

The requirement to notify us can be satisfied by notifying our agent. Notice can be by any means of communication.

 © 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.