UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| DEXON COMPUTER, INC., | Case No. 21-CV-1498 (PJS/DTS) |
| Plaintiff, | |
| v. | ORDER |
| TRAVELERS PROPERTY CASUALTY CO. OF AMERICA, | |
| Defendant. | |

---

Michael M. Lafeber and O. Joseph Balthazor, Jr., TAFT STETTINIUS & HOLLISTER LLP, for plaintiff.

Charles E. Spevacek and Louise A. Behrendt, MEAGHER & GEER, PLLP, for defendant.

Plaintiff Dexon Computer, Inc. ("Dexon") is a middleman. For more than 25 years, Dexon has acquired new and used computer equipment from thousands of suppliers (including Cisco, Hewlett Packard, Juniper, and Dell) and sold that equipment to thousands of customers. In July 2020, Cisco Systems, Inc. and Cisco Technology, Inc. (collectively "Cisco") brought a trademark-infringement action against Dexon in the United States District Court for the Northern District of California (the "Cisco Action").[1] In that action, Cisco alleged that, on roughly 35 occasions, Dexon sold

---

[1] Cisco asserted claims under §§ 32 and 43(a) of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a), as well as claims under the California Unfair Business Practices Law and the common law. See Cisco Am. Compl. [ECF No. 8-2].

counterfeit products—that is, products that bore Cisco marks but that had not been manufactured by Cisco. Cisco Am. Compl. ¶¶ 23, 67.

Dexon tendered the defense of the Cisco Action to Travelers Property Casualty Company of America ("Travelers"), which insured Dexon under a CyberFirst Liability Policy (the "CyberFirst Policy" or "Policy"). Travelers rejected the tender. In response, Dexon brought this lawsuit, seeking a declaration that Travelers has a duty to defend and indemnify Dexon in connection with the Cisco Action.

This matter is now before the Court on Travelers' motion to dismiss. For the reasons that follow, the Court denies the motion.

I. BACKGROUND

*A. The Policy*

Travelers issued a CyberFirst Policy to Dexon in 2019, and the parties renewed the Policy in 2020. Compl. ¶ 10 [ECF No. 1]. The Policy covers "'communications and media wrongful act[s]' alleged to have occurred on or after . . . May 18, 2019" (the "Retroactive Date"). *Id.* ¶ 11. The Policy's definition of "communications and media wrongful act[s]" expressly includes acts of trademark infringement. *Id.* ¶ 14.

The Policy includes a related-acts provision (sometimes known as a "deemer clause"), which is the focus of Travelers' motion to dismiss. The related-acts provision provides:

> Each "communications and media wrongful act" in a series of "related" "communications and media wrongful acts" will be deemed to have been committed on the date the first "communications and media wrongful act" in that series is committed.

*Id.* ¶ 22; CyberFirst Policy Terms at 32 [ECF No. 8-3]. Under the Policy, then, a wrongful act (such as an act of trademark infringement) is not covered if either (1) the wrongful act occurred *before* the Retroactive Date (i.e., before May 18, 2019) or (2) the wrongful act occurred *after* the Retroactive Date but is "related" to a wrongful act that occurred before the Retroactive Date.

### B. The Cisco Action

On July 22, 2020, Cisco sued Dexon for trademark infringement, unfair competition, and unjust enrichment. ECF No. 8-1. Cisco filed an amended complaint on March 19, 2021. ECF No. 8-2. As noted, Cisco alleges that, on roughly 35 occasions, Dexon sold counterfeit Cisco products—that is, products that bore Cisco marks but that had not been manufactured by Cisco (or with Cisco's authorization). Cisco Am. Compl. ¶¶ 23, 67. Cisco alleges that these acts of trademark infringement were part of "counterfeit trafficking schemes" in which Dexon engaged for more than 15 years. *Id.* ¶ 1. According to Cisco, Dexon has continually used "counterfeit Cisco trademarks . . . to dupe its customers into believing that the illicit Cisco-branded products and software licenses it was selling are genuine, when in fact they were not." *Id.*

After being sued by Cisco, Dexon asked Travelers to defend and indemnify it under the CyberFirst Policy. Compl. ¶ 20. Travelers denied that it had any obligation to defend or indemnify, citing the related-acts provision. Specifically, Travelers argued that each and every act of trademark infringement alleged in the Cisco Action either occurred before the Retroactive Date or was "related" to an act of trademark infringement that occurred before the Retroactive Date. *Id.* ¶¶ 20–21. In reaching its conclusion, Travelers relied entirely on Cisco's allegation that Dexon's acts of infringement were part of longstanding "counterfeit trafficking schemes."

Dexon brought this action against Travelers, seeking, inter alia, a declaration that Travelers must defend and indemnify it in connection with the Cisco Action. Travelers now moves to dismiss.

## II. ANALYSIS

### A. Standard of Review

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Du Bois v. Bd. of Regents*, 987 F.3d 1199, 1202 (8th Cir. 2021). Although the factual allegations in the complaint need not be pleaded in great detail, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, a Rule 12(b)(6) motion must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). But the court may consider materials that are necessarily embraced by the complaint, as well as any exhibits attached to the complaint, without converting the motion into one for summary judgment. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).

Here, the parties submitted several documents for the Court to consider in ruling on Travelers' motion to dismiss, including the original and amended complaints in the Cisco Action, Dexon's answer to the Cisco complaint, the CyberFirst Policy, and letters Dexon sent to Travelers regarding this coverage dispute. All of these documents were referred to, cited, or quoted in Dexon's complaint, and thus they are not matters outside the pleadings. *Id.* ("documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings" are nevertheless embraced by the complaint (quoting *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012))).

### B. Governing Law

The parties agree that Minnesota law applies. Under Minnesota law, "[t]he duty to defend is broader in scope than the duty to indemnify." *Auto-Owners Ins. Co. v. Todd*, 547 N.W.2d 696, 698 (Minn. 1996). An insurer—like Travelers—that seeks to avoid its

duty to defend "has the burden of establishing that *all* parts of the cause of action fall *clearly* outside the scope of coverage." *Id.* (emphasis added).  This is a very high hurdle.  Travelers must defend the Cisco Action if the possibility of a covered claim is apparent from the face of Cisco's complaint or if Travelers is aware of facts (including facts provided by Dexon) indicating that one of Cisco's claims *may* be covered.  See *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 415 (Minn. 1997); *Garvis v. Emps. Mut. Cas. Co.*, 497 N.W.2d 254, 258 (Minn. 1993).  If any part of any claim asserted in the Cisco Action is even "arguably" within the scope of coverage, Travelers must defend the entire action.  *Meadowbrook*, 559 N.W.2d at 415; *Cont'l Ins. Co. v. Daikin Applied Americas Inc.*, 998 F.3d 356, 361 (8th Cir. 2021).

## C.  Relatedness

The Cisco Action primarily consists of trademark claims against Dexon.  The parties agree that trademark claims are generally covered by the CyberFirst Policy.  *See* Def. Memo. at 10 [ECF No. 7]; Pl. Memo. at 7–8.  Travelers argues, however, that none of the trademark claims asserted in the Cisco Action are covered because every act of infringement alleged in the Cisco Action that occurred after the Retroactive Date is "related" to an act of infringement that occurred prior to the Retroactive Date.[2]  If

---

[2]The parties dispute whether the related-acts provision is an exclusion; if it is an exclusion, then Travelers bears the burden of proving that the provision applies to an allegedly wrongful act.  *See UnitedHealth Grp. Inc. v. Columbia Cas. Co.*, 941 F. Supp. 2d

(continued...)

Travelers is correct, then the Policy would not cover any of the infringing acts, as all of those acts would be treated as though they had occurred prior to the Retroactive Date.

At this point in the litigation, the Court finds that it cannot rule as a matter of law that each and every act of trademark infringement alleged in the Cisco Action is "related" to an act of trademark infringement that occurred prior to the Retroactive Date. One problem for Travelers is that "relatedness" is a nebulous concept. The CyberFirst Policy defines "related" to mean "connected, tied, or linked by any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes." Compl. ¶ 23; CyberFirst Policy Terms at 30. The Minnesota Supreme Court has held that acts are "related" for purposes of insurance coverage if they "are connected by time, place, opportunity, pattern, and, most importantly, method or modus operandi." *Am. Commerce Ins. Brokers, Inc. v. Minn. Mut. Fire & Cas. Co.*, 551 N.W.2d 224, 231 (Minn. 1996).

Both parties agree that these definitions cannot be applied literally. For example, *every* claim that any litigant has ever made against Dexon is "linked" by the "fact" that

---

²(...continued)
1029, 1035 (D. Minn. 2013) (holding that, under Minnesota law, an insured "bears the initial burden of proving that a claim is within a policy's grant of coverage," while an insurer "bear[s] the burden to prove that a claim falls within a policy exclusion") (citing *Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.*, 819 N.W.2d 602, 617 (Minn. 2012)). The Court need not resolve that dispute, however, as its ruling would be the same no matter which party bears the burden of proof.

the claims were made against Dexon, and yet Travelers concedes that every claim ever made against Dexon is not "related" to every other claim ever made against Dexon. Minnesota courts have gone even further, holding that two acts may not be "related" even if they share several commonalities.  In *American Commerce*, for example, the Minnesota Supreme Court found that one set of dishonest acts was not part of "a series of related acts" with another set of dishonest acts—even though all of the acts in both sets were committed by the same employee during the same period of time and cheated the same employer—because the employee had used one method of embezzlement in committing the first set of acts and a different method of embezzlement in committing the second set of acts.  *Id*. at 230–31 (rejecting a "strict application" of the rule that acts are related if they share a common cause); *see also UnitedHealth Grp. Inc. v. Columbia Cas. Co.*, Case No. 05-CV-1289 (PJS/SRN), 2010 WL 317521, at *12–13 (D. Minn. Jan. 19, 2010) (explaining problem if policy definition of relatedness was read literally because "all claims for which United seeks indemnity from an insurer involve at least one common 'true' fact or circumstance—such as the 'true fact' that United was named as a defendant in the underlying action").[3]

---

[3]Other courts also reject a strict or literal application of "relatedness."  *See, e.g.*, *Connect Am. Holdings, LLC v. Arch Ins. Co.*, 174 F. Supp. 3d 894, 903 (E.D. Pa. 2016) (holding that a 2013 trademark infringement lawsuit against the insured was not related to a prior cease-and-desist letter or prior trademark infringement complaint, despite involving the same claimant and some of the same trademarks and explaining, "[t]he
(continued...)

At bottom, then, the question in this coverage action is whether each of the infringing acts alleged in the underlying Cisco Action is related *enough* to an infringing act that occurred prior to the Retroactive Date. That is a question of degree, and questions of degree are difficult to answer without a fully developed factual record.

A second problem for Travelers is that Dexon informed it of facts that, if true, would make it highly likely that at least some of the alleged acts of infringement cited in the Cisco Action are not related to any other act of infringement. *See Garvis*, 497 N.W.2d at 258 ("[I]f the insurer is aware of facts indicating that there may be a claim, either from what is said directly or inferentially in the complaint, or if the insured tells the insurer of such facts, or if the insurer has some independent knowledge of such facts, then the insurer must either accept tender of the defense or further investigate the potential claim."). Dexon informed Travelers that Dexon acquires products from thousands of suppliers. Compl. ¶ 28; Dexon Ans. to Cisco Compl. ("Dexon Ans.") ¶ 96 [ECF No. 14-1]. Dexon further explained that the allegedly counterfeit products cited by Cisco in its complaint were (1) different products (2) that had been purchased at different times

---

[3](...continued)
focus of the interrelatedness inquiry is on the acts, not on the parties or the goals"); *S.D. Network, LLC v. Twin City Fire Ins. Co.*, No. 4:16-CV-04031-KES, 2017 WL 4233019, at *7 (D.S.D. Sept. 22, 2017) ("[T]he court finds that a common nexus requires a causal connection or a link between the two 'wrongful acts.' . . . It is not enough for the actions to be similar in nature or to have parallel facts. Rather, the two actions must have linked or causally connected facts.").

(3) from different sources (4) by different Dexon employees and then (5) sold to different customers. *See* Cisco Am. Compl; Mar. 2021 Dexon Letter to Travelers ("Mar. Letter") at 3 [ECF No. 14-4]; May 2021 Dexon Letter to Travelers ("May Letter") at 2 [ECF No. 14-5].

Dexon also informed Cisco that Dexon had never received a warning or complaint from Cisco about any of the suppliers from whom Dexon purchased the products that are at issue in the Cisco Action, and Dexon had no other reason to believe that any of those sellers was providing counterfeit products. Mar. Letter at 4; May Letter at 2. Dexon further explained to Cisco that, before Dexon sells any product, it subjects that product to extensive quality control. Dexon Ans. ¶ 96. Finally, Dexon told Cisco that it had worked with some of the suppliers of the allegedly counterfeit Cisco products for more than 20 years without ever having reason to believe that those long-time suppliers had provided counterfeit products.[4] Mar. Letter at 4.

Given the information that Dexon provided to Cisco, the Court cannot hold, as a matter of law, that every act of trademark infringement alleged in the Cisco complaint is

---

[4]Dexon argues that some unintentional trademark infringement is inevitable in the secondary market. Dexon Ans. ¶¶ 117–18 (alleging that even Cisco's "Authorized" resellers are "victimized by the presence of counterfeit product in the marketplace and have been caught selling counterfeit Cisco product"). Dexon says that, no matter how careful it is, it simply cannot guarantee the authenticity of every single one of the many thousands of products it sells each year. *Id.* That is particularly true with respect to Cisco products, because Cisco refuses to provide resellers with the tools they need to be certain that they do not sell counterfeit Cisco products. *Id.*

*necessarily* related to an act of trademark infringement that occurred prior to the Retroactive Date. To the contrary, if what Dexon told Cisco is true, a jury is likely to find that at least some of the acts of infringement were unrelated to any other infringing act. And again, if even *one* of the post-Retroactive Date acts of infringement is even *arguably* unrelated to any pre-Retroactive Date act of infringement, Travelers owes Dexon a defense.

In moving to dismiss Dexon's complaint, Travelers relies almost entirely on the allegations in the Cisco complaint that Dexon's infringing acts were part of counterfeit trafficking schemes in which Dexon had engaged for more than 15 years. Cisco Am. Compl. ¶ 1. But there are several problems with Travelers' position:

*First*, Travelers ignores the fact that its duty to defend depends not merely on what appears within the four corners of Cisco's complaint, but also on facts that do not appear in the complaint but of which Travelers is aware. *See Garvis*, 497 N.W.2d at 258. As explained above, Dexon has informed Travelers of facts that, individually and collectively, strongly suggest that at least some of the acts of infringement alleged by Cisco are not related to any other acts of infringement, including pre-Retroactive Date acts.

*Second*, Cisco's allegation about longstanding "counterfeit trafficking schemes" is largely irrelevent to its legal claims against Dexon. Trademark infringement is a strict-

liability offense. *See Taubman Co. v. Webfeats*, 319 F.3d 770, 775 (6th Cir. 2003) ("[T]he Lanham Act is a strict liability statute. If consumers are confused by an infringing mark, the offender's motives are largely irrelevant." (citation omitted)). If Cisco shows that Dexon sold a counterfeit product, then Dexon will be held liable. *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 381 (6th Cir. 2006). It does not matter whether Dexon *knew* that it was selling a counterfeit product. *See Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 766 (8th Cir. 2010) ("[P]roof of bad intent is not required for success in an infringement or unfair competition claim . . . ."); *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 386 n.2 (8th Cir. 2009) ("To prove a trademark infringement claim, a plaintiff must show that it has a valid, protectible mark and that there is a likelihood of confusion between its mark and the defendant's mark.").

True, whether Dexon knew that it was selling a counterfeit product is relevant to the question of remedies—specifically, whether Cisco can recover treble damages and attorney's fees. *See* 15 U.S.C. § 1117(b). Thus, the jury in the Cisco action may be asked whether Dexon acted intentionally in selling a counterfeit product. It is also possible that, in trying to prove that an act of infringement was intentional, Cisco will introduce evidence that Dexon was engaged in some kind of scheme. At the end of the day,

though, Cisco will not have to prove—and the jury will not have to decide—whether any act of infringement was related to any other act of infringement.

*Third*, Cisco's allegation that Dexon was engaged in long-running "schemes" finds almost no factual support in the complaint. Cisco repeatedly accuses Dexon of engaging in schemes, but Cisco does little to establish any connection between the various acts of infringement that it alleges. Cisco's typical infringement allegation reads something like this:

> On [date], Dexon sold to [company] a Cisco-branded [product] bearing [serial number]. [Company] later contacted Cisco for assistance after [product] failed. Upon further investigation, Cisco determined that [product] was counterfeit.

*See, e.g.*, Cisco Am. Compl. ¶ 35. The complaint says little or nothing about how Dexon obtained each of the allegedly counterfeit products, why Dexon must have known each of the products was in fact counterfeit, or how each of the allegedly infringing acts was related to other allegedly infringing acts. And thus, the complaint says little or nothing to support Cisco's allegation that all of the alleged acts of infringement were part of one or another long-running "scheme." In short, Travelers has denied Dexon a defense based on allegations in the Cisco complaint that are supported by few facts in the complaint, that are largely irrelevant to the Cisco Action, and that are substantially undermined by facts provided to Travelers by Dexon.

For these reasons, the Court cannot conclude—based on the allegations in the Cisco complaint and the facts made available to Travelers—that a jury must find that *every* act of trademark infringement alleged in the Cisco complaint is "related" to an act of infringement that occurred prior to the Retroactive Date. Accordingly, the Court denies Travelers' motion to dismiss this coverage action.[5]

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendant's motion to dismiss [ECF No. 4] is DENIED with respect to Counts One and Two of the complaint and GRANTED with respect to Count Three of the complaint. Count Three is DISMISSED WITHOUT PREJUDICE.

Dated:  July 11, 2022                          s/Patrick J. Schiltz
                                               Patrick J. Schiltz, Chief Judge
                                               United States District Court

---

[5]At oral argument, counsel for Dexon conceded that Count Three of the complaint—the bad-faith claim—should be dismissed for failure to state a claim. *See St. Paul Fire & Marine Ins. Co. v. A.P.I., Inc.*, 738 N.W.2d 401, 407 (Minn. Ct. App. 2007) ("To establish extracontractual damages in [a] breach of contract action, [the insured] must do more than simply allege a malicious or bad-faith motive in breaching a contract. . . . [The insured] must prove the elements of an independent tort . . . .").